# Richmond

## J. E. TRINKLE V. COMMONWEALTH OF VIRGINIA.

April 28, 1938.

Present, All the Justices.

The opinion states the case.

*Alexander H. Sands* and *R. R. Parker,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *D. Gardiner Tyler, Jr.,* and *Edwin H. Gibson, Assistant Attorneys-General,* for the Commonwealth.

HOLT, J., delivered the opinion of the court.

On October 5, 1932, Jim Frank entered into a contract with the Commonwealth of Virginia, acting through

its Commissioner of Highways, H. G. Shirley, under which he undertook to construct, for $14,641.15, 1.3 miles of gravel road in Russell county, designated as project No. F-661C-B-12. That contract he sublet in October, 1932, to J. E. Trinkle for $1,000. The rules and regulations of the Highway Department forbid subleases of highway contracts, but the trial court, in order to prevent delay, permitted this case to be heard upon its merits. In doing this, it has very properly charged Trinkle, the plaintiff, with all knowledge which could be properly charged against the contractor, Frank. A jury was empaneled but was afterwards discharged by consent and the entire matter submitted to the court. Plaintiff's major claim is set forth in this letter:

"Clinchport, Va.
"Dec. 1, 1932.

"Mr. W. W. McCleavy, Dist. Mngr.,
"Bristol, Va.

"Dear Sir:—

"I have been informed that the Gravel for project f661 CB Russell County will come *for* Gravel pit on the property of Tigner's approximately two and one half miles from the road under construction.

"When this project was let to contract the engineer was unable to to give any information concerning the location of the Gravel pit for this project other than it would be along the right of way for this project and would not have to be hauled from other locality.

"Please take this up with the State and arrange for the payment of extra price for hauling this gravel from this Gravel pit now under consideration. You realize it will cost me thirty cents more per cubic yard more than the price bid on this gravel if I have to haul it that distance, and will appreciate you looking into this matter and arrange for the payment of the extra amount per Cu yard for hauling this gravel to this project.

"Yours Very Truly,
"Jim Frank."

To that letter the district engineer replied on December 5th, saying:

"I note that you state when you looked over this project that you were advised that the gravel would be along the right of way of this project. I am inclined to believe that there is some misunderstanding in regard to this for there are no indications that the gravel could be had along the right of way. If there had been any question in your mind as to the location from which this gravel was to be secured the time to have taken this matter up would have been prior to bidding on the work. You have been doing work for the State long enough to know that it is impossible to change contract prices after the contract has been signed. up, and the time to get matters of this kind straightened out is prior to bidding on the work."

This gravel pit was farther away than Frank thought it was.

The contract itself contains a statement of the items which went to make up the contract price of $14,641.15. In it this appears: "4,268 cu. yds. gravel @ fifty cents per cu. yd. 50c $2,134.00." Plaintiff's claim now is for 4,390-43 cubic yards of gravel at $1.32 per cubic yard, aggregating $5,795.37. In paragraph six of his petition, this appears:

"Said officers and agents of the Department of Highways did, before such overhaul work was performed, agree and promise to pay your petitioner a reasonable amount, to-wit, an amount of eighty-two cents per cubic yard, for such overhaul work over and above the price stated in said proposal."

In a book of the Highway Department entitled "Specifications," which went into effect on January 1, 1931, appears this statement:

"(c) All gravel from local pits shall be placed as directed by the Engineer within the free haul of one-half (½) mile haul, and an allowance of one (1) cent per cubic yard per one hundred (100) feet will be made for overhaul in excess of one-half (½) mile.

"(d) No overhaul will be allowed on gravel, other than that secured from local pits."

These specifications the Highway Department has changed from time to time as it had a right to do. Some of them appear upon a printed sheet which went into effect January 1, 1932, and which was mailed to contractors of record, including Frank. Among those changes is this:

"Section 11, page 84, paragraph 4d:

"Shall read as follows: 'No overhaul will be allowed on gravel.'"

Not only was this sheet mailed to Frank, but he tells us that he knew about the change. This knowledge is imputed to Trinkle, who was, as we have seen, not a subcontractor at all but was merely doing that work for Frank which Frank had contracted to do.

The trial judge has filed in the record this memorandum of his judgment, which we adopt:

"The petition in this cause shows that on the 5th day of October, 1932, one Jim Frank of Clinchport, Virginia, was awarded a contract by the Highway Commission for the construction of 1.3 miles of highway, designated as project No. F-661C-B-2; under plans and specifications prepared by the Highway Department, for the sum of $14,641.15. He was also the successful bidder in two other projects at, or about the same time and verbally assigned the project to J. E. Trinkle, a contractor, and on the 5th day of December, 1933, confirmed the assignment in writing and asserts that the Department of Highways had notice of, recognized and approved the sublease or assignment. This was denied by the defendant, and that proposition is sustained by the court for the reason that the rules and regulations of the Highway Department forbid any sublease, and throughout this case there was no such recognition by the Highway Department, and all transactions were with the original contractor, Jim Frank, and all checks were made payable to him, the petitioner being recognized as the agent or superintendent of the contractor. For the purpose of preventing delay and cost, the pleadings will be amended and

the cause continued in the name of Jim Frank, as all facts and law applicable to him apply likewise to his assignee.

"The principal amount involved in this petition is for overhaul, that is, the hauling of gravel from pits further from the project than one-half a mile, the plaintiff contending that he should be compensated on the basis of eighty-two (.82c) cents per cubic yard, for such overhaul and the defendant relying on what is asserted, as an amendment to Paragraph 4-D of Section 11, on page 84 of the specifications of January 1, 1931, as embodied in an *errata* sheet. A jury was empaneled to try the facts in the case and in its progress it became apparent that it was primarily a question of law and practically the entire amount involved was fixed, therefore, the jury was discharged and the cause was submitted on oral arguments and briefs. The primary question for consideration and determination, is:

"Was the contractor bound, in his bidding, by the plans and specifications on file in the office of the Highway Department, or, could he rely upon the proposals submitted by the Highway Department, which referred to page 84, Section 11, Paragraph 4-D, of the specifications relating to the haulage of gravel as set forth in the specifications promulgated on January 1, 1931, and failed to take into consideration the fact that the Highway Department could amend those specifications, which is asserted, was done and sent to the petitioner and other contractors of record by way of the *errata* sheet in which the Commission provided that *no overhaul should be allowed.*

"Section 8 of the Highway Act, Chapter 403 of the Acts of 1922, as amended, provides in part 'The advertisement shall state the place where the bidders may examine the plans and specifications * * * .' That is mandatory upon the Highway Department and cannot be waived, and if the advertisement stated that the plans and specifications were on file in the Department of Highways for examination by the prospective bidders, then those plans and specifications are the authentic and binding specifications and are superior to any other plans and specifications con-

sulted by any bidder. It is a mandate of the law and cannot be waived by the Highway Department. In some instances this proposition can work a hardship on bidders who reside at a distance from the city of Richmond, in which the office of the Highway Department is located, but, if for accommodation of the prospective bidders, literature is permitted to be sent from the office of the Highway Department, the bidder takes that at his risk, unless such information is furnished by a proper official of that Department duly authorized so to do, otherwise the Commonwealth of Virginia, through its Department of Highways, could be harassed by litigation by contractors who through mistake, incompetence or ignorance have lost on their contracts and assert that they have been misled by some subordinate in the office of the Highway Department.

"The Highway Department has not insisted upon all bidders coming to the office for the purpose of examining the plans and specifications, and for the convenience of those bidders, it has submitted to them standard specifications bearing date of January 1, 1931, of course reserving the right to change any part of the specifications at any time the Commission deemed wise, and it is shown conclusively that these specifications were changed or modified in October, 1931, becoming effective January 1, 1932, and embodied in what is known as 'the *errata* sheets,' which were mailed to the contractors of record.

"The *errata* sheets contained the following:

" 'Section 11, page 84, paragraph 4-D:

" 'No overhaul will be allowed on gravel.'

"The defendant asserts that she mailed this *errata* sheet to the plaintiff, Jim Frank, which assertion is denied by the plaintiff, but I am convinced that the preponderance of the evidence shows that this *errata* sheet was mailed to the plaintiff at the same time he was furnished with affidavits, 1, 2, and 3, relating to his financial standing.

"The court is further convinced that the plaintiff, Jim Frank, had knowledge of the amendment and that no overhaul would be allowed on gravel for the reason that in a

conversation with Mr. Clevy held at Gate City, the contractor stated in answer to the question:

" 'Q. Did he not ask you whether or not you knew that you were not entitled to overhaul?

" 'A. Like I said on yesterday, that was on the project, not off the job.

" 'Q. How did you get that?

" 'A. What I meant by that, I told Mr. McClevy no overhaul would be allowed on the job.

" 'Q. Where did you find that out?

" 'A. *It is on the plans and on the books they stated no overhaul would be allowed on the job, but* this haul was entirely *off* the project.

"The plaintiff contractor in reply to a question by counsel for plaintiff, said:

" 'A. I don't recollect if I did or not, but if I did I mean the specifications and plan did not allow overhaul on the project, that is, the job we were working on.' (R., p. 215)

"On record, page 216, in reply to a question he answered:

" 'A. * * * When I looked at this job at Hansonville project I looked at the road between these points and I asked Mr. Thurston where this gravel was coming from for this project. He said. "I don't know." I said, "How am I going to bid on it if I don't know where the material is coming from to go on this project?" '

"On page 42 of the record, in answer to a question, he stated, 'I understood there was no overhaul allowed on the project.' "

"On December 1, 1932, before any gravel had been hauled, he asked Mr. McClevy to take up with the Commission, payment of the extra amount per cubic yard for hauling the gravel to this project (R., p. 20).

"On December 5, 1932, Mr. McClevy told him that had there been any question in his mind as to the location from which this gravel was to be secured, the time to have taken that matter up was prior to bidding on the work. That ended the matter so far as the contractor was concerned, although he talked with Trinkle who wanted to know where

the gravel was to come from, and was told that he had been to the office and was going to get more money for it, and that he 'would get 30c more per cubic yard' (R., p. 85).

"It is also shown in the evidence that from December 1, 1932, the time of the letter from the contractor to Mr. McClevy, to March the 6th, 1933, no gravel was laid on the project. It will, therefore, be shown conclusively that the contractor, Frank, knew that no allowance would be allowed for overhaul, or, if he did not know, he should have known by reasonable diligence on his part. And even before the gravel was laid he had the matter of extra compensation before representatives of the Highway Department, which was subsequent to the execution of the contract.

"The plaintiff takes the further position that there was no meeting of minds between the contractor, Jim Frank, and the Highway Commission, therefore, he should be compensated on the basis of *quantum meruit*.

"It is true that if there is no meeting of minds there is no definite contract, but if the work be done and accepted by the Highway Department, the compensation should be allowed on *quantum meruit*. But if the contractor, through ignorance or carelessness, fails to inform himself of the plans and specifications which are subject to change or modification at any time by the other contracting party, then he enters into such contract at his risk and cannot claim that he did not know that there had been changes or modifications in the specifications, when there was available to him at any time the original one in the office of the Highway Department and kept there by mandate of law. So I am of opinion that there was no mutual mistake or failure of the minds to meet through any cause that would have standing in the court.

"There is no controversy as to the quality of the work performed by the contractor, nor of its completion not in accordance with the plans and specifications and the Commonwealth is the beneficiary of the overhaul, but even taking those facts into consideration it is not for the court to say that the claim should be allowed. If this were done

it would place a premium on ignorance, carelessness or lack of diligence on the part of contractors, and encourage those who lose on projects to assert such claims as the one asserted here, and there would be no stability in a written contract and the Commonwealth of Virginia would be in a constant state of jeopardy. The contractor should thoroughly satisfy himself in detail as to the specifications and plans on file in the office of the Commission and if there be any doubt as to the interpretation or construction there should be a clarification before bids are submitted and contracts executed.

"It is not for the court to pass upon the question of the policy of the Highway Department, nor its method of giving information to prospective bidders, or how any changes in the specifications should be brought to the attention of prospective bidders as in the instant case, but it is easy to see that had the Highway Department been more careful in bringing to the attention of prospective bidders, any changes in the specifications, controversies of this kind would not be in court. It would have been so easy in the proposal sent out by the Highway Department to contractors of record, to directly call their attention to such an important amendment as that relating to a disallowance of overhaul, which heretofore had been allowed. It should know, and probably does know, that many of the contractors with whom it deals are uneducated and unversed in many of the details and construction of specifications, particularly is this true as to amendments or changes covered by *errata* sheets. If in their proposal where reference is made to the hauling of gravel, there had been inserted 'No overhaul allowed,' or, 'See amendment embodied in errata sheet of date,' then this contractor would not stand to lose over $5,000.00, and this litigation would have been avoided.

"For the reasons assigned, I am of opinion that the contractor, Jim Frank, has no standing in court and the petition should be dismissed.

"Julien Gunn, Judge."

In addition to plaintiff's claim for hauling gravel, which is his main contention, certain others are made which Judge Gunn did not deem necessary to consider in detail. In the petition, it is said that there had been improperly deducted $1,300 which represents $10 a day fine for delay in the completion of this work. Under the contract, this work was to be completed by December 19, 1932. It was not completed until May 19, 1933. There was a delay of at least 130 working days, and for this, there was charged up against the contractor $1,300. The Highway Department, after an examination, reached the conclusion that this was excessive. It deducted ninety-two days and charged the contractor with thirty-eight. Therefore, this contractor has been charged not with $1,300 for delay but with $380. Progress was slow and complaint was frequently made. Trinkle said that this was in part due to want of necessary equipment.

The attention of bidders is called to the necessity for prompt action:

"Attention of bidders is specifically called to the time for completion in this proposal. This time limit will be enforced and any prospective bidder who is not willing to accept this provision with the intention of complying with it is cautioned not to submit a bid."

Argument is not needed to show that public necessity requires that these contracts be prosecuted to completion promptly. It is for the Highway Department to say if there has been unreasonable delay, and its judgment should not be lightly set aside by courts.

A further indefinite claim of $500 for damages suffered in the hauling of material by another contractor while this road was under construction is now made. To this there are several answers. No such item was set up in Trinkle's original petition. In the contract itself this appears: "The contractor will be required to maintain traffic during the construction of this project." There is no satisfactory evidence to prove that damage in this amount

was suffered. It would have been evaded had the work been completed as contracted for.

We have covered those contentions which merit consideration. Our conclusion is that the judgment appealed from is plainly right and should be affirmed.

*Affirmed.*