# Richmond

## C. A. RAGLAND V. COMMONWEALTH OF VIRGINIA.

January 9, 1939.

Record No. 1980.

Present, All the Justices.

The opinion states the case.

*Harris, Harvey & Brown* and *Lindsey L. Moore,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Edwin H. Gibson* and *D. Gardiner Tyler, Jr., Assistant Attorneys-General,* for the Commonwealth.

EGGLESTON, J., delivered the opinion of the court.

On September 20, 1932, the Department of Highways of Virginia advertised for bids for the construction of a highway running through a portion of Halifax and Pittsylvania counties, and known as Project No. F752HB5-6. Pursuant to the statute (Acts 1922, ch. 403, section 8, p. 677*) the advertisement stated that the plans and specifications for the work to be done were on file for examination by the bidders at the Richmond office and the local district office of the Department of Highways.

C. A. Ragland having submitted the lowest bid, a formal contract was executed on October 21, 1932, between him and the Department of Highways. By its terms Ragland agreed to do the work "to the full extent as set forth in the specifications, special provisions, proposal, and plans, * * * which are hereby adopted and made part of this agreement as completely as if incorporated herein, * * * ."

The work was fully and satisfactorily performed and the stated contract price of $60,785.21 was paid.

Under the contract, among other things, Ragland was to dig, haul and spread upon the roadway 12,595 cubic yards of top soil or sand clay mixture, at the unit price of twenty-five cents per cubic yard. This unit price was paid.

Ragland claims that his proposal was based upon the standard specifications of the Highway Department, dated January 1, 1931, by the terms of which he was admittedly entitled to the additional sum of $15,265.10 for overhaul on this material, that is, for hauling it in excess of one thousand feet; that these were the last specifications fur-

---

*See Michie's Code of 1936, section 1969h.

nished to him by the Highway Department; and that before his bid was submitted he had no knowledge of any change therein.

The Highway Department had, however, promulgated numerous changes in these specifications. These changes became effective on January 1, 1932, and were in force when the bids were advertised for and the contract signed. One of these changes expressly provided that thereafter no payment would be made to the contractor for overhaul on soil deposited on the road. The Highway Department claims that this amended provision and not the previous provision is binding on the parties to the contract.

Payment of Ragland's claim for overhaul having been refused, this suit followed. There was a trial by a jury which resulted in a verdict for the plaintiff. This verdict the trial court set aside and entered a final judgment for the defendant. To review this judgment this writ has been granted.

We are of opinion that the case is controlled by the principles laid down in *Trinkle* v. *Commonwealth*, 170 Va. 429, 196 S. E. 652, which was decided since the writ was granted in the present case. That case involved the interpretation of a contract which was made on the same day as that in the present suit. It likewise involved a consideration of the specifications of the Highway Department which went into effect on January 1, 1931, and the amended specifications which became effective on January 1, 1932, as in this case.

The question there presented was whether the contractor was entitled to overhaul for gravel furnished in the construction of a road. There, as here, the contractor claimed that he had submitted his bid on the basis of the specifications of January 1, 1931, which provided for the payment of overhaul, when the amended specifications, which became effective one year later, expressly provided that no overhaul would be allowed on gravel. There, as here, the contractor claimed that the changes in the specifications were not binding on him because they had not been brought to his attention.

■■ This court disposed of the contractor's contention by adopting the following language from the opinion of the trial court (170 Va., at page 435, 196 S. E., at page 655):

" 'Section 8 of the Highway Act, chapter 403 of the Acts of 1922, as amended, provides in part "The advertisement shall state the place where the bidders may examine the plans and specifications * * * ." That is mandatory upon the Highway Department and cannot be waived, and if the advertisement stated that the plans and specifications were on file in the Department of Highways for examination by the prospective bidders, then those plans and specifications are the authentic and binding specifications and are superior to any other plans and specifications consulted by any bidder. It is a mandate of the law and cannot be waived by the Highway Department. * * * ' "

■ Therefore, in the instant case, the plans and specifications which were made a part of the written contract and became binding on the parties thereto, were those which were in effect at the date of and referred to in the advertisement calling for bids on this project.

■ Obviously the purpose of the statute is to insure competitive bidding in order that the State may have the work done at the lowest available price. There is, of course, no competitive bidding on a particular project if each bidder bases his proposal on a different set of specifications. To obviate just such a situation and to insure that all bids are based on the same specifications, the statute contemplates that the authentic and binding specifications are those referred to in the advertisement as being available for inspection by the prospective bidders.

■ Before submitting a bid on road construction work, in response to such an advertisement, the contractor should examine the plans and specifications at the place indicated. Clearly the statute places upon him the burden of doing so. There is no obligation on the Highway Department to ascertain before accepting a proposal that the bidder has read

and understands the plans and specifications under which he is bidding.

To place any other interpretation upon the statute would lead to endless confusion. If Ragland had the right to rely upon the 1931 specifications because he had not been informed of any changes therein, another contractor might claim, with equal merit, that he had relied on the specifications of 1929, because, forsooth, he had not been informed of any change therein. The Highway Department might find itself confronted with a situation in which there were as many different sets of specifications as there were bidders.

■ It is also argued that the conduct of certain of the employees of the Highway Department was such as to lead the contractor to believe that the provision as to the disallowance of payment for overhaul did not apply to this contract, because the places from which the soil was to be taken had not been designated or even determined before the contract was signed.

The obvious reply is that when the specifications had been promulgated and advertised, as required by the statute, they could not be changed or waived by the subordinate employees of the department. *Trinkle* v. *Commonwealth, supra.*

Much is said in the briefs as to whether Ragland had actual notice before submitting his bid that the 1931 specifications had been changed. While under the view we have taken of the matter this is entirely immaterial, the record contains conclusive proof that in March, 1932, and approximately six months before submitting his bid, Ragland actually received from the Highway Department an "errata sheet" showing numerous changes in the specifications, effective on January 1, 1932. One of the changes shown in this errata sheet was that thereafter no allowance would be made to the contractor for overhaul on top soil deposited on the road.

■ The contractor having entered into a valid and binding contract with the Highway Department, his right to recover must be predicated thereon. His claim that he

should be paid on a *quantum meruit* basis, and aside from the contract, cannot be sustained. *Trinkle* v. *Commonwealth, supra,* 170 Va., at page 438, 196 S. E., at page 656.

On the whole our conclusion is that the judgment is plainly right and must be affirmed. It is so ordered.

*Affirmed.*

HUDGINS, J., dissenting.