RAFAEL A. JUSTINIANO, Plaintiff and Appellee, *v.* COMMON-
WEALTH OF PUERTO RICO and PUERTO RICO HIGHWAY
AUTHORITY, Defendant and Appellant the latter.

No. R-70-321.     Decided December 16, 1971.

*Antonio Córdova González, Pedro Toledo González & Edwin
Tyler Albizu* for the Puerto Rico Highway Authority.
*Enrique Alcaraz Casablanca* for appellee.

Mr. Justice Pérez Pimentel delivered the opinion of the Court.

Rafael A. Justiniano filed a claim for damages against the Commonwealth of Puerto Rico and the Highway Authority. He grounded his cause of action on the fact that the Highway Authority, after awarding the contract to him in a competitive bidding for the construction of a 1.760-kilometer stretch of highway in the Municipality of Sabana Grande, subsequently proceeded, without stating the reasons, to declare said competitive bidding void.

The complaint having been answered and after holding a trial on the merits, the Superior Court, Mayagüez Part, rendered judgment ordering the Highway Authority to pay to plaintiff the amount of $7,379 for damages, plus costs and $800 for attorney's fees. We issued a writ to review this judgment.

The essential facts which served as ground for said judgment, according to the findings of the trial court, are the following:

Defendant Highway Authority advertised for bids for the construction of a 1.760-kilometer stretch of highway in the Municipality of Sabana Grande, the proposed work being known as Santana Project. Defendant Justiniano attended said competitive bidding as bidder after the Authority had given him all the facilities to examine the specifications and after he had made the corresponding studies to submit his bid.

The copies of the drawings delivered and submitted to several bidders were defective in failing to have any legend or to supply any information whatsoever as to the relocation of the water lines. Only the original drawings, which were in defendant's possession, had a note at the bottom which read "water line to be relocated." The relocation of these water lines had an estimated value fluctuating between $18,000 and $25,000.

On August 17, 1967, after the bidders' proposals were publicly opened and read, plaintiff had knowledge that he was the lowest bidder, and also he had knowledge of the bids made by the other bidders. From the comparison of the different bids it appeared that in relation to the item of relocation of the water lines, plaintiff had quoted the amount of $1,000; the highest bidder had quoted $16,500, and the estimated cost of the Highway Authority was $18,333.72. On August 20, 1967, plaintiff wrote a letter granting the Board of Awards an extension of 15 days to proceed to award the contract. Said extension was granted with the intention that the full Board would study the matter of the item of relocation of the water lines. The Chairman of the Board of Awards insinuated to plaintiff to continue with the steps connected with the award of the contract.

In his proposal plaintiff took into consideration and quoted the relocation of the water lines notwithstanding the fact that the information offered in the drawing was insufficient.

On September 26, 1967, plaintiff was notified by the Chairman of the Board of Awards that the contract had been awarded to him for the amount of his bid, $106,482.92. From the statement of the summary of proposals there appears that the estimate made by the engineers of the Authority for said project was $123,616.37 and that between plaintiff's estimate and that of the next lowest bidder, there was a difference of $18,217.74.

On September 27 or 28, 1967, plaintiff had a meeting with the Chairman of the Board of Awards and they argued as to the great difference between defendant's quotations and that of the Authority in relation to the item of relocation of the water lines, as to the insufficiency of the information supplied in the drawings, as to the negative economic effect which said difference could produce in plaintiff's budget, and as to plaintiff's petition to renegotiate the item of the relocation of the water lines.

On September 28 of the same year 1967, the Chairman of the Board of Awards notified plaintiff that the date for the award of the contract or the final decision on the project would be left open until plaintiff's petition to renegotiate the item of the relocation of the water lines was considered and settled.

On October 9, 1967, plaintiff had a meeting with the members of the Board of Awards and in said meeting the item of the relocation of the pipelines of the Aqueduct and Sewer Authority, was discussed. The Board admitted at that time that the drawings delivered to the bidders did not contain sufficient information on the relocation of the water lines.

On October 30 of the same year, plaintiff requested the Board to communicate to him its decision on the award of the contract, and by telegram of October 31, the Board notified plaintiff that it had declared void the competitive bidding for Santana project.

The Board refused to renegotiate the item of the relocation of the water lines with plaintiff and declared the competitive bidding void, under the reasoning that said direct renegotiation with the bidder was illegal and unfair for the other bidders.

Defendant then proceeded to advertise for bids again for the Santana project. Plaintiff did not appear at the same as bidder. In said new competitive bidding the lowest bid was $110,241.15; but the responsibility of the relocation of the water lines was assumed by the Puerto Rico Aqueduct and Sewer Authority for the amount of $18,332.72.

In its conclusions of law the trial court held that the action of the Board in ordering the cancellation of the public bidding was illegal and that said action was not grounded on the protection of the best interests of the Authority, but rather on the protection of the other bidders.

The "Puerto Rico Highway Authority Act"—Act No. 74 of June 23, 1965—provides in its § 11, that all work or

service contracts, except for personal services, and all purchases made by the Authority, including contracts for the construction of traffic facilities, shall be made after advertisement for bids sufficiently in advance of opening bids for the Authority to secure appropriate notice and opportunity for competition. Further on, this section sets forth a series of exceptions, none of which covers the Santana project. Said section also provides: ·

"In the comparison of bids and the making of awards, due consideration shall be given to such factors (in addition to whether the bidder has complied with the specifications) as the bidder's ability to perform construction work of the kind involved in the contract under consideration; the relative quality and adaptability of materials, supplies, equipment, or services; the bidder's financial responsibility, skill, experience, record of integrity in dealing, and ability to furnish repair and maintenance services; and the time of delivery or performance offered. The Authority may prescribe rules and regulations for the submission of bids." (9 L.P.R.A. (Cum. Supp.) § 2011, pp. 77 and 78.)

The purpose contemplated by statutes of this nature which require advertisement for bids is to insure competitive biddings in order that the State may have the work done for the lowest available price.[1] Furthermore, requiring contracts to be awarded to the lowest bidder prevents favoritism, corruption, extravagance, and improvidence in awarding contracts.[2]

It must be remembered that on September 26, 1967, plaintiff was notified that the contract had been awarded to him and that one or two days later said plaintiff raised before the Chairman of the Board of Awards the question of renegotiation of the item of the relocation of the water lines. It is obvious that his quotation for said item was extremely

---

[1] *Ragland* v. *Comm.*, 200 S.E. 601.

[2] *Attorney General* v. *Public Lighting Commission*, 118 N.W. 935.

low. That of the Authority itself was $18,332.72 and some bidders quoted it at over $16,000. The difference in quotation of this item evidently determined that plaintiff's bid for the performance of the project was the lowest one.

■ The Board of Awards refused to renegotiate said item. If it had done so it would have violated the Regulations approved by the Authority by virtue of the power granted to it by § 2 of the Act. In its Art. IV, Subdivision E, the Regulations provide:

"E: The envelopes containing the bids of the different bidders will be opened before the bidders present, at the exact time and date fixed, it being stipulated, *that no bid shall be modified once it has been opened . . . .*" (Italics ours.)

And in its Subdivision C(2) of Art. VI, it provides:

"2. Under no circumstances shall the bid be withdrawn, *changed or modified once it has been opened and read to the public.*" (Italics ours.)

■ In this case, plaintiff's proposition to the Board of Awards involved modifications or changes of his bid after all the proposals had been opened and read publicly. The Regulations provide that the Board can enter into direct negotiations with the lowest responsible bidder when it is most convenient to the best interests of the Authority. But this can only be done after the decision of the Board declaring the bidding void. In such case an order of priorities is established, among which there appears in the third place the direct negotiation with the lowest responsible bidder. To that effect, Art. V, Subd. F, provides:

"F: If the Board of Awards decides to annul the competitive bidding under consideration, it shall recommend:

1. To advertise new bidding.

2. To recommend the performance of the work by force account.

3. To engage in direct negotiations with the lowest responsible bidder when it appears to be most convenient for the best interests of the Authority.

4. When it is impossible to apply any of the foregoing provisions, in the order of priority in which they appear, it is proper to adopt any action considered convenient for the best interests of the Authority."

However, the wording of the Regulations of the Board of Awards seems to indicate that the Board may (1) award the contract, or (2) declare it void and then make the recommendations already indicated in the aforecopied Subdivision "F."

If the Board did not agree to renegotiate with plaintiff the item for the relocation of the water lines, to which it was not bound because (1) it was equivalent to amending plaintiff's bid after the other bidders' bids were opened and made known, and (2) there was a lack of sufficient information to the bidders as to said item, although defendant quoted for it after obtaining the necessary information, the Authority was not bound to award the contract for the execution of the Santana project to plaintiff, notwithstanding the fact that initially the Chairman of the Board of Awards had advised him that the contract had been awarded to him.[3]

It has been held that an agency has the right to revoke the award of a contract at any time before the corresponding contract is entered into, since a contract is not binding on an agency until formal contract containing all the legal requirements for the performance of the work is executed in writing.[4]

It is obvious that the annulment of the public bidding redounded to the benefit of the interests of the Authority. It thus prevented the risk of plaintiff's impossibility to execute the work on time and according to the specifications of the contract and the arising of problems as a result of the low bid

[3] See, 46 *Am. Jur.* § 43.

[4] *Covington* v. *Basich Bros. Const. Co.*, 233 P.2d 837.

made by plaintiff. It redounds also to the benefit of the other bidders who were precluded from making lower bids because they quoted more or less the estimated value for the item of the relocation of the water lines, while plaintiff quoted said item in a much smaller amount, as a result of which, he was the lowest bidder. Finally, we believe that it also resulted in plaintiff's benefit and not in his prejudice since, after the Authority rightly refused to renegotiate with him said item for relocation of the water lines, with all probability the project would have occasioned him losses and not profits.

For the reasons stated, the judgment rendered on February 13, 1970, by the Superior Court, Mayagüez Part, will be reversed.

Mr. Chief Justice Negrón Fernández took no part in the decision of this case.