## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## ROSENBERG V. TURNER.

### March 27, 1919.

1. USAGES AND CUSTOMS—*Construction of Words—"Excavate"—Parol Evidence.*—Although the word "excavate" be not a word of art requiring explanation from those skilled in a particular branch of trade or learning, even ordinary words or phrases may by usage of trade acquire a restricted or limited meaning, and, when they do, that meaning may be shown by parol evidence, and this is no violation of what is usually termed the parol evidence rule, but the custom is deemed to be a part of the contract.

2. INTERPRETATION AND CONSTRUCTION—*Words Given Their Ordinary Meaning.*—Words are generally construed in their usual, ordinary and popular sense, unless it can be legitimately shown in some way that they were used in some other sense, and the burden of showing this is always upon the party alleging it.

3. USAGES AND CUSTOMS—*Knowledge of Custom of Trade.*—A custom of trade cannot change the intrinsic character of the contract of parties who are ignorant of such custom. Evidence of a local custom or usage will not be received to affect the terms of a contract unless the party to be affected thereby had actual knowledge of such custom, or it was so well established, notorious and generally accepted that notice of it will be imputed to him.

4. USAGES AND CUSTOMS—*Objections to Evidence of.*—Evidence was admissible for the purpose of showing a local custom or usage, and if followed by evidence sufficient to charge the party with knowledge thereof, would have affected the contract in question. It was not so followed, nor was any motion made to strike it out, nor any instruction asked to disregard it. When offered it was admissible for the purpose for which it was offered. The objection to its admissibility was general. No grounds were stated.

   *Held:* That under these circumstances, appellant could not be permitted to say that the reception of the evidence might have affected the verdict.

97

5.  BUILDING CONTRACTS—"*Excavate.*"—The word "excavate," as used in a building contract, covers the removal of solid rock as well as earth and loose material.

6.  BUILDING CONTRACTS—*Power of Architect.*—A building contract provided that in case any difference of opinion should arise between the parties in relation to the contract, the work to be done under it, etc., the decision of the architect should be final and binding on the parties.

    *Held:* That this provision of the contract gave to the architect the power to determine whether or not extra compensation should be paid by the owner to the contractor for work which the contractor claimed was not covered by the contract.

7.  INSTRUCTIONS.—Instructions presenting the opposing theories of plaintiff and defendant should be read together.

8.  INSTRUCTIONS—*Language.*—The trial court may discard all instructions tendered, and give instructions of its own, and if they correctly state the law, cover all the phases of the case presented by the evidence, and fairly submit the case to the jury without obscurity or ambiguity, no one can complain.

9.  INSTRUCTIONS—*Misleading Instructions — Building Contracts.* — Where plaintiff, a sub-contractor, was not claiming by virtue of the contract he had made with the general contractors, but by a subsequent contract alleged to have been made with the architect as the agent of the owner, an instruction dealing with the original letting only, and making no reference to any subsequent agreement between the parties, was properly refused because misleading.

10. INSTRUCTIONS—*Building Contracts—Express and Implied Contracts.*—An instruction which exempted defendant from liability unless the jury believed from the evidence that defendant expressly agreed with plaintiff was properly refused, as the jury might have been misled by the use of the word "expressly," as one of the claims of plaintiff was that there was a contract by implication.

Error to a judgment of the Hustings Court of city of Petersburg, in a proceeding by motion for a judgment for money. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Lassiter & Drewry,* for the plaintiff in error.

*Paul Pettit* and *Chas. Hall Davis,* for the defendant in error.

BURKS, J., delivered the opinion of the court.

Joseph L. Rosenberg let to contract the construction of a hotel in the city of Petersburg, according to plans and specifications which were made a part of the contract. Haymes Bros., general contractors, agreed to furnish all the materials and labor and do a complete job for a stated sum agreed upon with Rosenberg. The specifications, amongst others, contained the following clauses:

Under the title of "Excavating and Grading:"

"The contractors shall visit the site of the building and examine for himself the condition of the lot, and satisfy himself as to the nature of the soil.

"Excavate to the depth as shown by the drawings for the cellar, areas and outside entrances, and for trenches under all walls and piers, all trenches shall be excavated to the neat size as far as practicable, and each shall be leveled to a line on the bottom, ready to receive the foundation. The contractor must be careful not to excavate the trenches below the depth shown by the drawings; should he do so, he must pay the mason for the extra mason work thereby made necessary, as under no conditions will dirt filling be allowed."

Under the title of "General Provisions," the following:

"In any and all cases of discrepancy in figures, the matter shall be immediately submitted to the architect for his decision, and without such decision said discrepancy shall not be adjusted by the contractor, save and only at his risk; and in the settlement of any complications arising from such adjustment, the contractor shall bear all extra expense involved.

"The plans and these specifications are to be considered co-operative; and all work necessary to the completion of the design drawn on plans, and not described herein, and all works described herein and not drawn on plans are to be considered a portion of the contract, and must be executed in a thorough manner, with the best of materials, the same as if fully specified."

The general contractors sublet to the defendant in error, Turner, the brick work and excavating. The plans and specifications called for the excavation of a cellar of given dimensions to a depth of ten feet. After excavating to a depth of about two feet, Turner struck solid rock. This was a great surprise to Turner, Rosenberg, the supervising architect, and every one connected with the work. Thereupon, Turner stopped work and notified the supervising architect, who was the same person who had drawn the plans and specifications, and Rosenberg, that he did not consider blasting within the terms of his contract and that he would proceed no further unless he was paid for the blasting as extra work. Turner was a sub-contractor, and up to this time had no contract with Rosenberg. He claims, however, that the supervising architect was the agent of Rosenberg, and, as such, authorized him to proceed with the blasting as extra work. He completed the work, and presented to Rosenberg an account of the actual costs thereof, which Rosenberg refused to pay, and thereupon Turner proceeded by motion for a judgment against Rosenberg, and obtained the judgment to which this writ of error was awarded.

The notice of the motion is quite vague as to the contract upon which it is founded. It simply describes it as "a certain special contract or account, a copy of which is hereto attached," but no contract is attached, only an account for labor and materials. In the bill of particulars which the plaintiff was required to furnish, he states that the la-

bor was rendered and the materials were furnished "under a special verbal contract made between W. R. Turner, the plaintiff, and Joseph L. Rosenberg, the defendant, acting by R. A. Mundon, architect for the building and agent for the said Rosenberg." The plaintiff does not claim to have made any contract with Rosenberg directly, or that any contract was implied from anything said or done by Rosenberg directly, but that the contract was the result of the language and conduct of the supervising architect. The latter contract is denied by Rosenberg and the architect.

If the removal of solid rock, as well as earth, was within the meaning of the word "excavate" used in the specifications, which Turner had seen and inspected, although the presence of solid rock was a surprise to him, he had no right to demand extra pay for its removal. It was important, therefore, for him to show that it was not so included. This he attempted to do by showing that, by a local custom or usage in Petersburg, the word "excavate" in such contracts did not embrace solid rock, but referred only to earth and loose material. Turner himself apparently recognizes the fact that ordinarily "excavate" covers stone as well as earth, for he says, when examined as to the local custom, "if the parties know there is rock there it is specified specifically." It is then and then only that the word "blasting" is used, and hence the necessity for falling back on the custom. The evidence offered on the subject consisted of the testimony of the plaintiff himself and of one other witness. On this subject, the plaintiff testified as follows:

"Q. In the custom of the trade here, in contracting, what is the meaning, or the generally accepted meaning, of the word "excavating"?

"A. We always figure it as meaning excavating only earth, or soil, and we took it for granted that this was soil, particularly so, all that way through, because he specified, if you dig a foot deeper, it shall not be filled up with soil,

but would have to be built back up with brick—even a foot deeper than the plans showed.

"Q. According to the custom of the trade, is there any special term which is currently and ordinarily used here in reference to the removal of hard rock, solid rock?

"A. Well, if the parties know there is rock there, it is specified specially.

"Q. Well, in speaking of removing hard rock, in what terms would you speak of it?

"A. Blasting the rock.

"Q. So that, as I understand it, when you used the term 'excavating,' you mean the removal of earth and loose dirt, and when you are referring to the removal of hard rock you used the term 'blasting'?

"A. Yes, sir.

"Q. That is generally customary in the trade around here, is it?

"A. Yes, sir."

The witness, Wilkinson, testified as follows:

"Q. Have you ever done any contracting yourself?

"A. Yes, sir, I have; I am contracting now.

"Q. According to the custom of the trade, what is the meaning of the term 'excavate' when used in a contract?

"A. According to the custom that we have here in Petersburg, all excavations are of dirt. When it comes to any blasting, that is stone; that is blasting strictly. It is just the removal of dirt and any other debris that may fall in from a burned building, or anything like that—any loose stuff.

"Q. And when you speak of removing solid rock, you usually use the term 'blasting'?

"A. Yes, sir."

[1-3]    This line of examination was objected to by the defendant, but his objection was overruled, and he except-

ed.  Although the word 'excavate' be not a word of art requiring explanation from those skilled in a particular branch of trade or learning, even ordinary words or phrases may by usage of trade acquire a restricted or limited meaning, and, when they do, that meaning may be shown by parol evidence, and this is no violation of what is usually termed the parol evidence rule, but the custom is deemed to be a part of the contract.  12 Cyc. 1081, and cases cited; Brown on Parol Evidence, sec. 57.  Words, however, are generally construed in their usual, ordinary and popular sense, unless it can be legitimately shown in some way that they were used in some other sense, and the burden of showing this is always upon the party alleging it.  It would doubtless be a surprise to the public to learn that the word 'excavate,' as used in the case at bar, did not include solid rock, in the absence of any evidence of a local usage or a general trade usage such as is here claimed to exist.  It was necessary, therefore, to establish such usage.  The mere establishment of the usage, however, was not sufficient.  It was also necessary to bring home to the defendant knowledge of such usage, or else to show that it was of such long continuance and so certain, general, universal and notorious that knowledge thereof would be imputed to the defendant.  A custom of trade cannot change the intrinsic character of the contract of parties who are ignorant of such custom.  *Ferguson* v. *Gooch,* 94 Va. 1, 26 S. E. 397, 40 L. R. A. 234; *Consumers' Ice Co.* v. *Jennings,* 100 Va. 719, 42 S. E. 879.  In *Syer & Co.* v. *Lester,* 116 Va. 541, 82 S. E. 122, it was held that "evidence of a local custom or usage will not be received to affect the terms of a contract unless the party to be affected thereby had actual knowledge of such custom, or it was so well established, notorious and generally accepted that notice of it will be imputed to him."  See also on

the subject of local customs or usages of trade *Richlands* v. *Hiltebeitel,* 92 Va. 91, 22 S. E. 806; *Southwest Va. M. Co.* v. *Chase,* 95 Va. 50, 27 S. E. 826; *Richmond* v. *Barry,* 109 Va. 274, 63 S. E. 1074; *Straus* v. *Fahed,* 117 Va. 633, 85 S. E. 969; *Sutherland* v. *Gibson,* 117 Va. 840, 86 S. E. 108.

We have not deemed it material in this case to consider whether or not it is necessary for the party relying upon a local custom or usage to set it up in his pleadings. On that question the authorities are in conflict. *Oriental L. Co.* v. *Blades L. Co.,* 103 Va. 730, 741, 50 S. E. 270, and authorities cited.

[4] The objection, however, was general, and did not specify any ground. It was admissible for the purpose of showing the local custom or usage, and if followed by evidence sufficient to charge the defendant with knowledge thereof would have affected the contract. It was not so followed, nor was any motion made to strike it out nor any instruction asked to disregard it. When offered it was admissible for the purpose for which it was offered. The objection to its admissibility was general. No grounds were stated, and under the circumstances of this case, the defendant will not be permitted to say that its reception may have affected the verdict.

[5, 6] While we are of opinion, as hereinbefore stated, that the word "excavate," as used in the case at bar, covers the removal of solid rock as well as earth and loose material, yet, as held in *Stokes* v. *Amerman,* 8 N. Y. Supp. 150, the contrary claim by Turner was not so clearly without foundation to support it as to create a suspicion of good faith in raising the question. As soon as he struck solid rock, he stopped work and notified the supervising architect that he would proceed no further unless he was paid extra therefor. The architect was the agent of the owner to see that

the plans and specifications were carried out. There is some conflict in the evidence as to whether or not the architect agreed that he should be paid extra therefor, but if the architect had the right to decide whether or not he was entitled to extra compensation, the question was one for the jury, and there is sufficient evidence to support their finding. Under the terms of the contract between Rosenberg and the general contractors, it was provided "That in case any difference of opinion shall arise between said parties in relation to the contract, the work to be done or that has been performed under it, or in relation to the plans, drawings and specifications hereto annexed, the decision of Richard A. Mundon, the architect, shall be final and binding on all parties hereto." We are of opinion that this provision of the contract gave to the said architect the power to determine whether or not such extra compensation should be paid by the owner, and that the verdict of the jury supporting that view, rendered upon the conflicting evidence, is conclusive of the question.

[7] Instructions 2 and 3, given by the trial court of its own motion, were as follows:

"2. If the plaintiff, who, as sub-contractor, was making the excavation, in prosecuting the work of excavation, struck rock which required blasting, and thereupon notified the supervising architect that blasting was not contemplated in the contract and would be extra work; and if the architect directed him to proceed with the work, but keep a separate account of the cost of the blasting, and that he would be paid therefor, then, under the contract, this decision of the architect was binding upon his principal, the defendant, and the jury should find for the plaintiff."

"3. If, however, the architect informed the plaintiff that the blasting was covered by the contract and was not extra work, but directed him to proceed with the work, keeping

98

a separate account of the cost of the blasting, and he would take the matter up with the defendant, and he did take it up with the defendant and the defendant refused to pay for the same as extra work, then the plaintiff is not entitled to recover."

No objection is made to instruction 3. Objection is made, however, to instruction 2, because it "fails to inform the jury that the consent of the owner was necessary before the architect could order extra work. Moreover, under the contract in this case, it was not for the sub-contractor, Turner, to decide what was extra work. It was provided by the contract and specifications that the decision of the architect, Mundon, should be final and binding. Mundon decided that the excavation of the cellar to the depth shown in the drawings was not extra work."

The two instructions should be read together, as they present the two opposing theories of the plaintiff and the defendant, and when so read, we do not think they are amenable to the objection raised. Under the contract between the defendant and the general contractors, it was the province of the architect to decide whether work was or was not extra, and the owner's consent to such decision was given when he signed the contract.

[8] The trial court committed no error in refusing instructions II, III and IV, tendered by the defendant, as the instructions already given by the court sufficiently instructed the jury on the points covered by the rejected instructions. It is said in the petition for the writ of error (and authorities are cited to support the statement) that "a party has a right to have his instructions given in his own language, provided there are facts in evidence to support them, that they contain a correct statement of the law, are not vague, irrelevant, obscure, ambiguous, or calculated to mislead." This statement should always be accompanied by the further statement, "provided the jury has not already

been sufficiently instructed on the subject." The trial court may discard all instructions tendered, and give instructions of its own, and if they correctly state the law, cover all the phases of the case presented by the evidence, and fairly submit the case to the jury without obscurity or ambiguity, no one can complain. *E. I. DuPont, etc., Co.* v. *Snead's Adm'r,* 124 Va. 177, 97 S. E. 812. This practice will often relieve the difficulties arising out of a multitude of instructions.

[9] Instruction V, tendered by the defendant, was properly refused because it was misleading. The plaintiff was not claiming by virtue of the contract he had made with the general contractors at the time his bid was made, but by a subsequent contract alleged to have been made with the architect as the agent of the owner. The instruction tendered dealt with the original letting only, and made no reference to any subsequent agreement between the parties. Its tendency was to lead the jury to believe that they should find for the defendant, notwithstanding a subsequent agreement, if the plaintiff failed to consult the architect as to the meaning of certain terms before submitting his bid.

[10] Instruction VI, tendered by the defendant, was also properly refused, as the latter part of the instruction exempted the defendant from liability unless the jury "further believe from the evidence that Rosenberg expressly agreed with said Turner to pay for said excavation as an extra." The jury may have been misled by the use of the word "expressly." One of the claims of the plaintiff was that he stopped work as soon as he struck rock and refused to proceed further unless he was paid extra for the blasting, and that the architect thereafter directed him to proceed with the excavating and to keep a separate account of the costs thereof, thereby creating a contract by implication. There was conflict in the evidence as to whether there was an express contract to pay extra for the work,

but if there was a contract by implication it was as bind-ing on the defendant as if it had been expressed in words, and this view of the case should not have been excluded from the jury.

For the reasons hereinbefore stated, the judgment of the hustings court is affirmed.

SIMS, J., concurs in the foregoing opinion, except in its conclusion as to the usual and general meaning of the word "excavate," as used in building contracts and as used in the case in judgment.

PRENTIS, J., concurs in the result.

*Affirmed.*