## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

ROBERT T. MAIN, JR., AND KATHRYN M. MAIN, PARTNERS TRADING AS
ROBERT T. MAIN COMPANY V. DEPARTMENT OF HIGHWAYS AND SID-
NEY C. DAY, JR., COMPTROLLER OF VIRGINIA.

June 14, 1965.

Record No. 5986.

Present, All the Justices.

*William R. Cogar* and *James C. Roberts* (*Collins Denny, III; Denny, Valentine & Davenport; Tucker, Mays, Moore & Reed*, on brief), for the plaintiffs in error.

*Frederick T. Gray* (*Robert Y. Button, Attorney General; M. Ray Johnston, Assistant Attorney General; Paul D. Stotts, Assistant Attorney General; Williams, Mullen & Christian*, on brief), for the defendants in error.

EGGLESTON, C. J., delivered the opinion of the court.

On this appeal we are to determine whether the lower court erred in sustaining demurrers to and dismissing the original and amended petitions which Robert T. Main, Jr., and Kathryn M. Main, partners trading as Robert T. Main Company, hereinafter called the plaintiffs, filed in the lower court against the Department of Highways and the State Comptroller to recover the amounts alleged to be due by virtue of a contract which the plaintiffs entered into with the Department of Highways for the construction and improvement of a section of an interstate highway in Fairfax and Prince William counties.

The allegations of the original petition may be summarized thus:

During November, 1958 the Department of Highways advertised for bids for the construction and improvement of 8.480 miles of Interstate Route 66 in Fairfax and Prince William counties. Included

among the contract bid items was the placement and stabilization of approximately 196,000 cubic yards of select material "of a minimum CBR value of 12" upon that portion of the roadway prepared to receive its foundation and surface courses.

In the preparation of their bid the plaintiffs and the authorized representatives of the Department met on the site of the proposed construction, at which time these representatives designated on the ground and delineated upon the project plans a number of sources of material located within the roadway limits, which material the Department assured and represented to the plaintiffs was of sufficient "CBR value" and of suitable quality to be employed for the select material requirements of the contract.

Relying upon these assurances and representations, the plaintiffs submitted to the Department a bid proposal in the sum of $1,841,787.39. The plaintiffs' proposal was accepted by the Department and a contract was executed in writing on December 29, 1958. The plaintiffs commenced work under the contract on January 5, 1959.

During the latter part of 1959 and early part of 1960, the plaintiffs, in the course of their work, began to excavate and place as select material that which had been designated by the Department. After a portion of this material had been excavated and placed, the Department notified the plaintiffs that the sources originally designated were not of sufficient "CBR value," were not of suitable quality, and could no longer be used by the plaintiffs for the procurement of such material.

The Department thereupon directed the plaintiffs to secure from sources outside the limits of the project another type of select material and to finish the graded roadway with the latter material to a depth of six inches. Further, the Department directed the plaintiffs to place beneath the select material other material than that specified in the contract.

The plaintiffs complied with these directions of the Department and performed all conditions of the contract on their part. The extra work thus required of the plaintiffs was performed at a cost of $509,468.97 over and above the original contract price of the project.

In the further course of performance the plaintiffs laid a section of 36-inch corrugated metal pipe, in a manner expressly approved by the Department. From causes beyond the control of the plaintiffs a failure subsequently occurred in this pipe and the Department required them to excavate the pipe and replace the section which had failed, at a cost of $2,360.34.

All of the work required of the plaintiffs was accepted by the Department as of August 3, 1962. Thereafter the Department, in measuring for payment the quantities of select material excavated, placed and stabilized by the plaintiffs, failed to measure the same in the manner provided for in the contract. As a result, the plaintiffs were paid a sum for such material which was $47,253.65 less than that to which they were entitled under the contract.

The Department also deducted and withheld from payment to the plaintiffs the sum of $5,310 as liquidated damages for an alleged delay of 118 days in the completion of the contract. The delay in the completion of the project resulted directly from the modifications, changes and breaches of the contract by the Department and from the opening of the project to traffic by the Department prior to the date set for the completion of the work.

Upon completion of the contract the plaintiffs made timely and proper demands for payment of the sums due them, but these demands were refused.

The defendants demurred to the petition on the grounds that (1) the matters complained of are among those upon which the plaintiffs agreed in their contract that the decision of the State Highway Commissioner would be final and binding; (2) the plaintiffs failed to allege compliance with § 105.12 of the contract with respect to claims for adjustment and disputes, compliance with which is a prerequisite to the right to recover.

It was stipulated and agreed that the construction contract between the Department of Highways and the plaintiffs and the Department's Road and Bridge Specifications should be considered in determining the issues raised by the demurrer.

The specifications, which were integral parts of the contract, contained among others these pertinent provisions.[1]

---

[1] "Sec. 104.03. *Alteration of Plans; Increase or Decrease of Quantities.*—The Department shall have the right to make alterations in plans or character of work as may be considered necessary or desirable during the progress of the work to complete satisfactorily the proposed construction. Such alterations shall not be considered as a waiver of any conditions of the contract nor invalidate any of the provisions thereof.

\* \* \* \* \* \*

"Whenever the termini of the project are changed and whenever any change or combination of changes results in increasing or decreasing the original contract amount by more than twenty-five (25) per cent, a supplemental agreement, acceptable to both parties to the contract, shall be executed in advance of performing the affected work. \* \* \*"

"Sec. 104.04. *Extra Work.*—The Contractor shall perform unforeseen work, for

The lower court sustained the demurrer, with leave to the plaintiffs to file an amended petition. In sustaining the demurrer it held that since the petition had failed to allege that the plaintiffs had complied with certain provisions of the Department's specifications which were embodied in the contract, their suit against the Department could not be maintained.

The plaintiffs filed an amended petition alleging that the Department had waived and was estopped to assert the various contractual provisions which the lower court had relied upon in sustaining the demurrer to the original petition. Further, the plaintiffs asserted that the arbitration clause embodied in § 105.13 of the specifications, relied upon by the defendants in their demurrer, was unenforceable as a matter of law.

The defendants again demurred on substantially the same grounds as those asserted in their demurrer to the original petition, and on the additional ground that the factual allegations in the amended petition were insufficient in law to raise an estoppel or to constitute a waiver by the Department of the provisions in the contract relied upon by the latter.

The lower court sustained the demurrer to the amended petition and the plaintiffs having declined leave to file a further amendment, the petition was dismissed.

---

which there is no price included in the contract, whenever it is deemed necessary or desirable in order to complete fully the work as contemplated, and such extra work shall be performed in accordance with the specifications and as directed; provided, however, that before any extra work is started a work order shall be issued and approved."

"Sec. 105.02. *Deviation From the Plans, Profiles, Etc.*—There shall be no deviation from the plans, profiles, cross sections, specifications, special provisions or approved working drawing except by mutual agreement between the Department and the Contractor. When changes and deviations are found necessary, they shall be covered in writing with a 'Work Order.' Each work order, so executed, shall become a supplement to the contract. * * * "

"Sec. 105.11. *Final Inspection and Acceptance.*—Whenever all the materials have been furnished, all the work performed, and the construction provided and contemplated by the contract has been satisfactorily completed, all in accordance with these specifications, the Engineer shall make the final inspection. * * * "

"Sec. 105.12. *Claims for Adjustment and Disputes.*—In any case where the Contractor deems that extra compensation is due him for work or material not clearly covered in the contract or not ordered by the Engineer as an extra, as defined herein, the Contractor shall notify the Engineer in writing of his intention to make claim for such extra compensation before he begins the work on which he bases the claim. If such notification is not given and the Engineer is not afforded proper facilities by the Contractor for keeping strict account of actual cost thereof, then the Contractor agrees to waive the claim for extra compensation. Such notice by the Contractor and the fact that the Engineer has kept account of the cost as aforesaid, shall not in

In their amended petition the plaintiffs base their right to recover the cost of the extra work in excavating and placing suitable material on the roadway, $509,468.97; the alleged shortage in the amount paid them for excavating materials, $47,253.65; the cost of relaying the pipe, $2,360.34, and the sum of $5,310 wrongfully withheld from the payment due the plaintiffs, on the breach of the express contract between the parties.

They also base their right to recover the first of these items by virtue of what they allege was a "modification by mutual consent of the parties" of the terms of the original contract. They base their right to recover all of the items on the implied agreement of the Department to pay the reasonable value of all labor, materials and equipment furnished by the plaintiffs in the performance of the work.

On appeal the plaintiffs contend that the lower court erred in sustaining the demurrer to their amended petition, because, they say, (1) the Highway Department waived and is estopped to assert the various contractual provisions which the court held had barred the plaintiffs' right of recovery; (2) the arbitration provision of § 105.13 of the specifications does not bar the plaintiffs' cause of action, because (a) it is void and unenforceable, as a matter of law, and (b) the Department is estopped to assert it; (3) the petition sufficiently alleges the plaintiffs' right to recover under the terms of the modified agreement of the parties; and (4) the petition sufficiently alleges the plaintiffs' right to recover on the implied agreement between the parties.

any way be construed as proving the validity of the claim. In case the claim, after consideration by the Commission, is found to be just, it shall be allowed and paid for as an extra as provided herein for extra work. Nothing in this section shall be construed as establishing any claim contrary to the terms of Section 104.03"

"Section 105.13. *Commissioner as Referee.*—To prevent all disputes and litigations, the Commissioner shall decide all questions, difficulties and disputes, of whatever nature, which may arise relative to the interpretation of the plans, construction, prosecution and fulfillment of the contract, and as to the character, quality, amount and value of any work done and materials furnished, under or by reason of the contract, and his estimates and decisions upon all claims, questions and disputes shall be final and conclusive upon the parties thereto."

"Sec. 106.01. *Source of Supply and Quality Requirements.*—The materials used on the work shall be equal in quality to the requirements of these specifications. The source of supply of each of the materials shall be approved by the Engineer prior to delivery. As a part of his contract documents, the Contractor shall file a statement of the origin, composition, manufacture of all materials to be used in the work, together with samples, if required. If it is found, after trial that sources of supply previously approved do not produce uniform results or otherwise prove unacceptable, the Contractor shall furnish materials from other approved sources."

"Sec. 106.02. *Local Material Pits.*—If the Contractor desires to furnish materials

In its written memorandum the lower court held that the plaintiffs were not entitled to recover for the alleged extra work performed by them because they failed to allege the execution of a supplemental agreement therefor as required by § 104.03 of the specifications, or that they had obtained an extra work order therefor as required by §§ 104.04 and 105.02, or had notified the engineer in writing of their intention to make claim for such extra compensation before beginning the work as required by § 105.12.

To meet these deficiencies, in their amended motion the plaintiffs alleged that the Department is estopped to rely upon these provisions of the specifications in that when it was ascertained that the material previously designated for the road work was not of suitable quality and could no longer be used, the Department directed the plaintiffs to secure suitable material from another source, and that they did so.

Obviously, this necessity for a change in the source of the material did not relieve the plaintiffs of the obligations imposed upon them by the terms of the contract. Section 106.01 of the specifications expressly provides that, "If it is found, after trial that sources of supply previously approved do not produce uniform results or otherwise prove unacceptable, the Contractor shall furnish materials from other approved sources." The plaintiffs must have known that this change would require extra work at an added cost. They could have fully protected themselves by obtaining a supplemental agreement therefor as provided in § 104.03, or by obtaining extra work orders as provided in §§ 104.04 and 105.02.

Moreover, § 105.12 of the specifications specifically provides that where the contractor deems that extra compensation is due him and the work has not been ordered as an extra under a duly issued and written work order, then the contractor must give notice in writing

---

from local deposits, he shall first secure approval of the source from the Engineer. The Department may obtain options on available pits for borrow or other local materials and the Contractor may, at his election, take advantage of such options. No pits shall be opened until the material has been tested, approved and cross-sectioned. The Contractor shall assume full responsibility for the production of uniform and satisfactory materials from such local deposits. * * * "

"Sec. 109.07. *Acceptance and Final Payment.*—When final inspection and final acceptance have been duly made by the Engineer, as provided in Section 105.11, the Engineer shall prepare the final estimate of the quantities of the various classes of work performed, and after the approval of such final estimate by the Commissioner, there shall be paid to the Contractor the entire sum due after deducting all previous payments and all other amounts to be retained or deducted under the provisions of the contract. * * * "

of his intent to claim an extra and afford proper facilities for keeping a strict account of costs. That section expressly provides that unless he does these things, the contractor "agrees to waive the claim for extra compensation." The plaintiffs took none of these prescribed steps to insure payment for this extra work.

But, aside from this, it is well settled that the doctrine of estoppel does not apply to the rights of a State when acting in its sovereign or governmental capacity. This is so because the legislature alone has the authority to dispose of or dispense with such rights. See 31 C. J. S., Estoppel, § 140b, pp. 692, 693; 19 Am. Jur., Estoppel, § 166, p. 818; 49 Am. Jur., States, etc., § 85, p. 298; *Id.*, § 86, p. 299; Annotation: 1 A. L. R. 2d, § 5, p. 344 *ff*. In *Almond* v. *Gilmer*, 188 Va. 822, 836, 51 S. E. 2d 272, 277, we held that the construction, maintenance and operation of a highway system is a governmental function. See also, *Almond* v. *Day*, 199 Va. 1, 8, 97 S. E. 2d 824, 830.

One of the grounds of the defendants' demurrer, which the lower court sustained, was that the matters complained of are among those which the plaintiffs had agreed in their contract that the decision of the State Highway Commissioner would be final and binding. This ground involves § 105.13 of the specifications which provides that the Commissioner shall decide all questions which may arise as to the character, quality, amount and value of any work done and material furnished, and that "his estimates and decisions upon all claims, questions and disputes shall be final and conclusive upon the parties thereto." The court held that this provision was valid and binding on the parties, in the absence of any allegation that the Commissioner was guilty of fraud, bad faith, or had exceeded his authority. We agree with that holding.

Similar provisions are frequently embodied in building and construction contracts and are generally upheld. Corbin on Contracts, Vol. 3A, § 650, p. 115; 13 Am. Jur. 2d, Building, etc. Contracts, § 32, p. 34; 5 Am. Jur. 2d, Arbitration and Award, § 20, p. 535; 17A C. J. S., Contracts, § 499(2), p. 752; *Condon* v. *South Side R.R. Co.*, 14 Gratt. (55 Va.) 302, 314, 315; *Baltimore & Ohio R.R. Co.* v. *Polly, Woods & Co.*, 14 Gratt. (55 Va.) 447, 460; *Belmont Iron Works* v. *Hotel Corporation of Norfolk*, 109 Va. 269, 271-272, 63 S. E. 1068; *Rosenberg* v. *Turner*, 124 Va. 769, 777, 98 S. E. 763.

The fact that the Commissioner is made the arbiter does not affect the validity of the agreement. 5 Am. Jur. 2d, Arbitration and Award, § 67, p. 569; *State Highway Department* v. *MacDougald Const. Co.*,

189 Ga. 490, 6 S. E. 2d 570, 576, 577; *Belmont Iron Works* v. *Hotel Corporation of Norfolk, supra*, 109 Va. at 272, 273.

■ The plaintiffs contend that § 105.13 is contrary to public policy and unenforceable, because, they say, its purpose is to oust the jurisdiction of the courts in that it does not provide that compliance therewith is a condition precedent to the right to recover under the contract. See 5 Am. Jur. 2d, Arbitration and Award, § 36, p. 547.

We do not agree with this contention. It is not the purpose and effect of the provision to oust the jurisdiction of the courts. Its purpose is to limit the questions which may be litigated to those which have been settled by the Commissioner as the referee. It recognizes that such decisions may be enforced in a proper action. As applied to the present circumstances, the finding of the referee of the amount due upon the contract is by implication made a condition precedent to a right of action therefor. 5 Am. Jur. 2d, Arbitration and Award, § 36, p. 547; *Condon* v. *South Side R.R. Co., supra*, 14 Gratt. (55 Va.) at 316, 317. The allegation that the "Department" "refused to pay" the plaintiffs' claim denotes that the Commissioner, the head of the Department, has found that there is nothing due to the plaintiffs on their claim.

■ The plaintiffs contend that the Department has waived and is estopped to rely on the provisions of § 105.13 in that it failed to act upon, ignored and refused to pay the plaintiffs' claim. There is no merit to this contention. In the first place, as we have already seen, the doctrine of estoppel does not apply to the rights of a State in the exercise of its governmental function in constructing a state highway. Moreover, we are aware of no principle of law which supports the view that failure to act upon or pay an obligation constitutes a waiver of any defense to the alleged obligation or an estoppel to assert such defense.

■ The plaintiffs argue that the allegations in Count V of their amended petition are sufficient to entitle them to recover the amount due for the work done and material furnished in the excavation and placement of the select material on the roadway by virtue of the "modification by mutual consent of the parties" of that portion of the contract relating thereto.

These allegations are that when it became necessary to change the selection and placement of the material, the representatives of the Highway Department and the plaintiffs "met on the site of the

proposed construction" and by "mutual consent" agreed to the necessary change; that the Department directed the plaintiffs to make such change; that the plaintiffs did so, and are entitled to recover the reasonable value of such work done and material furnished, which the plaintiffs say amounts to $565,392.86 *(sic)*. There is no allegation that such modified agreement was reduced to writing and signed by the authorized representatives of the Department. The argument in the brief is that such agreement was verbal, but quite legal and proper.

The statutes (Code, § 33-99 *ff.*) clearly set forth the manner in which contracts for the construction of state highways may be entered into. They provide for the advertising and acceptance of bids for such work and the entering into of written contracts with respect thereto. When the specifications for such work have been promulgated and advertised they cannot be changed or waived by subordinate employees of the Department of Highways. *Ragland* v. *Commonwealth*, 172 Va. 186, 191, 200 S. E. 601, 603.

Thus, we cannot agree that a contractor and subordinate employees of the Department of Highways may enter into an oral agreement for the modification of a formal written contract, entered into in the manner provided by law, and place upon the State an added obligation of more than $500,000.

After all, the claim of the plaintiffs here is for the recovery of extra work done by them. As has been said, the written contract which the plaintiffs executed clearly provided the method by which they could insure the recovery of the cost of such extra work, and not having followed the prescribed method, they are not entitled to such recovery.

What we have just said disposes of the plaintiffs' claim that they are entitled to compensation for the extra work done on an implied agreement or *quantum meruit* basis. See *Ragland* v. *Commonwealth*, *supra*, 172 Va. at 191, 192, 200 S. E. at 603.

The judgment is

*Affirmed.*

GORDON, J., concurs in the result.