## CIRCUIT COURT OF CLARKE COUNTY

Clarke County

    v.

Cable

May 8, 1973

Case No. (Chancery) 1523

By JUDGE ROBERT K. WOLTZ

The complainant, County of Clarke, pursuant to legislative grant of authority, adopted a subdivision ordinance effective August 19, 1957. In general, the ordinance forbids the subdivision of land into parcels of less than five acres except in conformity with its provisions.

Section 6-1 of the ordinance requires the subdivider to apply to the "agent" for approval of the subdivision plat. By § 2-1, *agent* is defined as the representative of the Board of Supervisors who has been appointed to serve as its agent in approving subdivision plats. Section 6-1 also provides that no lots are to be sold in a subdivision until the final plats shall have been approved and recorded as set forth in the ordinance.

Section 4-1 provides that the subdivider shall cause the plat to be recorded in the circuit court clerk's office and that the plat shall not be recorded until approved and certified by the agent in accordance with the regulations contained in the ordinance. It further provides that no lot shall be sold before the plat shall have been recorded. Section 6-8 provides that there shall be no approval of the plat until the subdivider has complied with the general requirements and minimum standards contained in the ordinance (which among other things require streets to be according to Department of Highways standards)

and further that approval of the final plat shall be written by the agent on the face thereof.

Building permits were issued for two or three dwellings which were erected on some of the subdivision lots, and commencing in 1960, the portion of Duff's tract subdivided into lots was assessed and taxed as lots.

December 11, 1964, Duff's personal representative sold the lots and certain adjoining land to Robert C. Lowe et ux. who in turn conveyed it to Gralo shortly thereafter, and since the institution of this suit, Gralo has conveyed to Cable. During that span of time prior to suit, several of the lots including those on which dwellings had been erected have been sold. The bill of complaint alleges that the subdivision plat was not approved by the agent of the supervisors as required in the ordinance and that the roads in the subdivision did not meet the standards necessary for approval of the plat. The bill prays for an injunction against sale of lots of the defendant in the subdivision until such time as the streets therein comply with the subdivision ordinance. At least two of the residents in the subdivision appeared to complain of the condition of the roads and the fact that there was no one to repair them. Apparently, these complaints to the Board of Supervisors was the genesis of the institution of suit.

Defendant denies ownership of the subdivision but admits ownership of certain lots therein. Defendant also asserts that Friant was agent of the Board of Supervisors to approve the plat and denies having sold lots in contravention of the provisions of the ordinance.

The evidence shows that John R. Friant was chairman of the Planning Commission of the county at the time he signed the Commission's approval to the plat in question. However, he admits that neither he nor the Commission was at the time appointed as agent of the Board, that he had signed approval to subsequent subdivision plats as chairman of the Commission, that he felt the provisions of the ordinance were met by submission of the "written" plat, that no performance bond for improvements was required of this subdivider and does not know why it was not required. It appears that one Bowerman had been appointed by the supervisors as agent to approve subdivision plats

and held that office at the time the plat was recorded and ostensibly had been approved.

The defendant maintains that she and her predecessors subsequent to Duff are innocent of any wrongdoing. She argues principally that due to the actions of Friant in endorsing approval on the plat, the acceptance of the plat for record, the issuance by an agent of the county of building permits with respect to certain of the lots, and the assessment of the lots by the county as lots for tax purposes, an estoppel has arisen which prevents the county from asserting the right which it claims to the injunction.

The State delegated a portion of its sovereign powers to the counties to permit them to enact, administer, and enforce ordinances regulating the subdivision of land. This particular function is therefore the exercise of a sovereign power expressly delegated to the complainant as a subdivision of the sovereignty. It is a governmental as opposed to a proprietary function of the county and distinctly an exercise of its police power.

Where the State is exercising a governmental function, estoppel has no application, though were the matter one between individuals, application of the doctrine would be appropriate. "The doctrine of estoppel does not apply to the rights of a State when acting in its sovereign or governmental capacity." *Main v. Department of Highways*, 206 Va. 143 (1965). *See also* Annotation, 1 A.L.R.2d 338 and 28 Am. Jur. 2d, *Estoppel and Waiver*, §§ 122 *et seq.*

This rule is a practical necessity. Government can act only through its agents, and it would not only be an incursion upon sovereignty but a source of incalculable mischief to the public and the public good if an individual could invoke estoppel against government, the basis of such invocation being the unauthorized acts or omissions, whether ignorant, negligent or fraudulent, of its officers and agents.

In this case, there is no question of deprivation of vested rights or violation of contractual rights by the State or a subdivision thereof. This being so and a governmental function being involved and one expressly delegated by the sovereign to the county, the defendant has no right to invoke estoppel against the complainant.

Admittedly the defendant is in a predicament, but that predicament derives from the unauthorized or negligent acts of government agents. In the first place, the chairman of the Planning Commission was devoid of any authority at all to approve the subdivision plat. Perhaps under those circumstances, the clerk had no authority to accept it for record, and likewise, there could have been no authority for anyone to issue building permits except in contravention of the ordinance. As to the assessment and taxation of the lots as such, so long as the defendant or her predecessors accepted the benefits of having subdivided land, even though illegally subdivided, no good reason appears why the county should not avail itself of increased revenue therefrom.

In situations such as this, government cannot be hamstrung to the injury of the general public by the faulty administration of its laws by its agents, though the result may be some injury to an unwary individual. This is particularly true in this case where there was available to the individual the ordinance and the public records of appointments and authorizations by the Board of Supervisors, however tedious it might have been to examine into them and however tempting it might be to accept at face value such purported information contained in the land records of the county.

A permanent injunction as prayed for will issue enjoining defendant from conveying or attempting to convey any of defendant's remaining lots in the purported subdivision.