COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Beales and McCullough
Argued at Alexandria, Virginia


WARA WARA, INC., t/a
 WARA WARA

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1005-14-4           JUDGE STEPHEN R. McCULLOUGH
                                                    FEBRUARY 24, 2015
VIRGINIA DEPARTMENT OF
 ALCOHOLIC BEVERAGE CONTROL


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Robert J. Smith, Judge

        Matthew S. Kensky (MacDowell Law Group, P.C., on briefs), for
        appellant.

        Kristina Perry Stoney, Senior Assistant Attorney General (Mark R.
        Herring, Attorney General; Cynthia E. Hudson, Chief Deputy
        Attorney General; John W. Daniel, II, Deputy Attorney General, on
        brief), for appellee.


        Wara Wara,[1] a restaurant located in Fairfax County, challenges a finding by the Alcoholic

Beverage Control (ABC) Board, affirmed by the Fairfax County Circuit Court, that it violated

several ABC regulations.  Wara Wara argues that the circuit court erred (1) in holding that the 2013

amendments to Code § 2.2-4027 did not change the standards of review for administrative agency

decisions appealed to circuit court; (2) in finding the "after hours consumption" charge substantiated

when Wara Wara relied, in good faith, on information from the ABC website; and (3) in upholding

the ABC Board's ruling that Wara Wara sold alcohol in an unauthorized manner.  Wara Wara also

seeks attorney's fees in the event that it prevails on appeal.  We affirm for the reasons noted below.

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] The restaurant later changed its name to The Honey Pig Izakaya.

BACKGROUND

On November 9, 2012, around 3:00 a.m., ABC agents paid an unannounced visit to Wara Wara. The ABC had received complaints of after-hours consumption of alcohol at the establishment. The agents found about twelve people inside, all restaurant employees. They were drinking alcohol. A manager explained that the employees were offered the alcohol free of charge and that the restaurant was closed to the public at that time. The employees were present because a photographer was taking pictures for a new menu. When the ABC agents asked the manager if he thought employees were allowed to drink alcohol after 2:00 a.m., he answered that he "allowed drinking with a meal when we didn't want to waste food, so I know we shouldn't sell after 2:00 . . . a.m., but I allowed employees to drink in order to – not to waste food." He stated that he did not know that the employees' after-hours consumption of alcohol violated ABC rules. The restaurant proffered another manager's testimony to the same effect.

Counsel for the restaurant offered as an exhibit a printout of a page from the ABC Board website. Under a webpage titled "Licensee Resources" appears a hyperlink for "Licensee Laws and Regulations." This hyperlink leads to a PDF document titled "Virginia Alcohol Laws Applying to Sellers and Servers." In relevant part, this page states that "[o]n-premise sales are not permitted between 2:00 a.m. and 6:00 a.m."

While at the restaurant, the ABC agents noticed several invoices for the sale of bottles of spirits, including one bottle of Patrón Silver tequila and seven bottles of Johnnie Walker whisky. The bottles were sold at $100 for the Johnnie Walker and $140 for the Patrón, and each came with a fruit plate. The Johnnie Walker bottles each contain about 25.5 ounces of whisky. The manager explained that purchasing a single shot of Johnnie Walker costs about $8 per shot glass and that each bottle contains twenty to twenty-two shots. Purchasing the entire bottle as individual shots would cost about $160. The restaurant decided to offer the entire bottle for $100 as a promotion to

boost sales, which had been low. When a customer orders a bottle, the manager testified, the bottle is kept at the bar, and the customer is served on a shot-by-shot basis. Customers were not given the entire bottle following the purchase.

The ABC Board charged Wara Wara with

> 1. . . . permitt[ing] the consumption of alcoholic beverages upon the licensed premises between the hours of 2:00 a.m. and 6:00 a.m., in violation of 3 VAC 5-50-30A.1 . . . .

> 2. . . . [selling] an alcoholic beverage authorized by the license but in an unauthorized place or manner . . . .

A hearing officer found the charges substantiated. On the after-hours violation, the hearing officer ordered the sale of alcoholic beverages suspended for ten days, with the option to terminate the suspension upon payment of $1,000. On the unauthorized manner of sale violation, the officer ordered the suspension of the mixed beverage license for twenty days, with the option to reduce to a seven-day mixed beverage license suspension upon payment of $2,000. The Board affirmed the hearing officer's decision. Wara Wara appealed to the Circuit Court of Fairfax County. That court affirmed the decision of the ABC Board. The court also concluded that the 2013 amendments to Code § 2.2-4027 did not alter the existing standard of review. This appeal followed.

ANALYSIS

I. THE 2013 AMENDMENTS TO CODE § 2.2-4027

In 2013, the General Assembly enacted the following changes to Code § 2.2-4027:

> When the decision on review is to be made on the agency record, the duty of the court with respect to issues of fact shall be ~~limited to ascertaining~~ *to determine* whether there was substantial evidence in the agency record ~~upon which the agency as the trier of the facts could reasonably find them to be as it did~~ *to support the agency decision. The duty of the court with respect to the issues of law shall be to review the agency decision de novo. The court shall enter judgment in accordance with § 2.2-4029.*

2013 Va. Acts ch. 619.

- 3 -

Appellant argues that this enactment overhauls the standard of judicial review of agency decisions, both for questions of fact and for issues of law. The Attorney General responds that these amendments merely codify existing law and do not supplant the existing standard of review. We must decline to answer that question in the context of this case. First, the facts are not in dispute. Although Wara Wara offered testimony to explain its actions, there was no conflict over what transpired. Wara Wara acknowledges that there is no disagreement with regard to the operative facts. Second, we can resolve the legal issues without resort to agency deference. The applicability of a due process defense, Wara Wara's second assignment of error, neither requires deference to the administrative agency nor implicates its specialized competence. Resolution of the third assignment of error turns on the plain language of the applicable regulation, and there is again no need to afford any deference to the ABC Board's interpretation.

Longstanding precedent instructs that "[i]t is not the office of courts to give opinions on abstract propositions of law," Franklin v. Peers, 95 Va. 602, 603, 29 S.E. 321, 321 (1898), and that "faithful adherence to the doctrine of judicial restraint warrants [the] decision of cases 'on the best and narrowest ground available,'" McGhee v. Commonwealth, 280 Va. 620, 626 n.4, 701 S.E.2d 58, 61 n.4 (2010) (quoting Air Courier Conference v. Am. Postal Workers Union, 498 U.S. 517, 531 (1991) (Stevens, J., concurring)). Therefore, while we appreciate the parties' thorough and thoughtful arguments on this question, we proceed to resolve the case without addressing a question that is academic in the context of this case. Accordingly, we review *de novo* the legal issues before us. Code § 2.2-4027.

## II. THE ABC BOARD PROPERLY CONCLUDED THAT WARA WARA SERVED ALCOHOL AFTER HOURS.

.

There is no dispute that Wara Wara served alcohol after 2:00 a.m. An ABC licensee is prohibited from selling alcohol or permitting its consumption on the premises between 2:00 a.m.

and 6:00 a.m. 3 Va. Admin. Code § 5-50-30. Therefore, absent a valid defense, Wara Wara is guilty of violating this regulation.

Wara Wara contends that due process precludes a finding of guilt because the ABC Board posted on its website a statement that "[o]n-premise sales are not permitted between 2:00 a.m. and 6:00 a.m." This statement is incomplete, Wara Wara points out, because it mentions only the prohibition on after-hours sales but not the prohibition against after-hours consumption.

Wara Wara argues that a defense, often called entrapment by estoppel, bars the ABC Board from holding Wara Wara liable. We recognized this defense in Miller v. Commonwealth, 25 Va. App. 727, 492 S.E.2d 482 (1997). Ordinarily, ignorance of the law is no defense to a criminal prosecution. Id. at 731, 492 S.E.2d at 485. The law recognizes an exception, however, rooted in the Fourteenth Amendment's Due Process Clause. This exception applies when "a defendant has reasonably relied upon affirmative assurances that certain conduct is lawful, when those assurances are given by a public officer or body charged by law with responsibility for defining permissible conduct with respect to the offense at issue." Id. at 735, 492 S.E.2d at 486-87. As one court observed, "for the state to prosecute someone for innocently acting upon such mistaken advice is akin to throwing water on a man and arresting him because he's wet." See People v. Studifin, 504 N.Y.S.2d 608, 610 (N.Y. Sup. Ct. 1986). "The defendant bears the burden of establishing this affirmative defense." Miller, 25 Va. App. at 737, 492 S.E.2d at 488.

In Miller, we held that a defendant could not be convicted of possessing a firearm as a convicted felon when he possessed a muzzle-loading rifle because his probation officer had assured the defendant that he could do so. Id. at 743-45, 492 S.E.2d at 491. Entrapment by estoppel, we were careful to note, constitutes "a narrow exception to the general principle that ignorance of the law is no defense [and it] should be applied with great caution." Id. at 732 n.2, 492 S.E.2d at 485 n.2 (citations and internal quotation marks omitted).

First, we note that the defense of entrapment by estoppel applies only in the criminal context, where due process protections are at their apex. Wara Wara does not point us to any decisions applying this defense to civil or administrative proceedings. The law does recognize an analogous defense in civil cases known as equitable estoppel.

> [A] party seeking to invoke the doctrine of estoppel must prove by clear, precise, and unequivocal evidence the following elements: (1) A material fact was falsely represented or concealed; (2) The representation or concealment was made with knowledge of the facts; (3) The party to whom the representation was made was ignorant of the truth of the matter; (4) The representation was made with the intention that the other party should act upon it; (5) The other party was induced to act upon it; and (6) The party claiming estoppel was misled to his injury.

Boykins Narrow Fabrics Corp. v. Weldon Roofing & Sheet Metal, Inc., 221 Va. 81, 86, 266 S.E.2d 887, 890 (1980). A fatal obstacle for Wara Wara's invocation of this defense is that, in Virginia, equitable estoppel "'does not apply to the rights of a State when acting in its sovereign or governmental capacity.'" Commonwealth v. Wash. Gas Light Co., 221 Va. 315, 324, 269 S.E.2d 820, 825 (1980) (quoting Main v. Dep't of Highways, 206 Va. 143, 150, 142 S.E.2d 524, 529 (1965)); see also LifeCare Med. Transps., Inc. v. Va. Dep't of Med. Assistance Servs., 63 Va. App. 538, 557, 759 S.E.2d 35, 45 (2014) (acknowledging the ongoing validity of Washington Gas Light). The ABC Board is a state agency, and here, it is acting in its sovereign capacity.

We acknowledge that some courts have modified the categorical bar of sovereign immunity. In federal practice, the United States Supreme Court has held that the "Government may not be estopped on the same terms as any other litigant." Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc., 467 U.S. 51, 60 (1984). Some federal courts allow the defense, provided

the government has engaged in affirmative misconduct.[2]  In <u>Washington Gas Light</u>, the Supreme Court of Virginia recognized that "[t]here is growing recognition among the state courts of the healthy principle that a person who relies in good faith on an agency rule should be held harmless from loss if that rule is later held invalid, or is amended."[3]  221 Va. App. at 324 n.4, 269 S.E.2d at 826 n.4 (citation and internal quotation marks omitted).  To date, however, our Supreme Court has not retreated from its holding that sovereign immunity bars the defense of equitable estoppel, and we are, therefore, bound by that holding.

Wara Wara's asserted defense fails for an additional reason.  Even assuming that entrapment by estoppel or equitable estoppel applies, none of Wara Wara's witnesses testified that they actually consulted the ABC's website, much less relied on it.  Entrapment by estoppel is an affirmative defense.  Therefore, Wara Wara bore the burden of showing, "as a threshold matter, the legal sufficiency of the content and source of the information *received*."  <u>Miller</u>, 25 Va. App. at 737, 492 S.E.2d at 487 (emphasis added).  Beyond this, "the defense is available only where the information *upon which the defendant has relied* is an affirmative assurance that the conduct giving rise to the conviction is lawful."  <u>Id.</u> at 738, 492 S.E.2d at 488 (emphasis added).  The due process defense Wara Wara invokes presupposes that the defendant has received information from the government and has relied on it.  Neither element is present here. Wara Wara failed to make the threshold showing necessary to put this defense in play, even if it did apply to administrative proceedings.

---

[2] <u>See</u> Mary R. Alexander, Note, <u>Equitable Estoppel:  Does Governmental Immunity Mean Never Having to Say You're Sorry?</u>, 56 St. John's L. Rev. 114, 117 n.12 (1981) (collecting cases).

[3] Detrimental reliance on a modified or abrogated regulation, of course, presents a different scenario than reliance on the contents of a website.

For these reasons, we uphold the decision of the ABC Board and the circuit court that Wara Wara violated ABC regulations when it served alcohol after 2:00 a.m.

### III. THE EVIDENCE ESTABLISHES THAT WARA WARA INFRINGED 3 VA. ADMIN. CODE § 5-50-160(B)(4) BY SELLING TWO OR MORE DRINKS FOR ONE PRICE.

Under 3 Va. Admin. Code § 5-50-160(B)(4), an ABC licensee is prohibited from "[s]elling two or more drinks for one price, such as 'two for one' or 'three for one.'" A "drink" is defined as "[a]ny beverage containing the amount of alcoholic beverages customarily served to a patron as a single serving by a retail licensee." 3 Va. Admin. Code § 5-50-160(A)(2). Wara Wara did not provide customers with the entire bottle. Instead, it served customers individual shots, about twenty-two per bottle, after they paid $100. The entire bottle is not a "drink." Rather, individual shots, the amount "customarily served to a patron as a single serving," were the "drink." Wara Wara's actions fall within the plain language of the prohibition against serving "two or more drinks for one price": it sold twenty-two drinks for one price, i.e., $100.

Wara Wara argues that the examples in the regulation, "two for one" and "three for one" "restrict[] and limit[]" the language of the prohibition. We do not find this argument persuasive. The language "such as 'two for one' or 'three for one'" serves as an illustration of what is prohibited. These examples do not limit the plain language prohibition on serving multiple drinks for one price to those specific examples.

Wara Wara argues that, if the ABC Board is correct, a restaurant could not prepare receipts showing multiple drinks for one total price. This formalistic argument, however, does not address the basis of the violation charged here. The problem is not the way Wara Wara's receipts are laid out. Rather, testimony from the restaurant manager establishes that Wara Wara sold an entire bottle for $100 and then served its contents in twenty or more shot increments.

Finally, the restaurant contends that such a reading of 3 Va. Admin. Code § 5-50-160(B)(4) would render illegal the sale of a bottle of wine or a pitcher of beer. We do not agree. A separate

prohibition, not at issue in this appeal, 3 Va. Admin. Code 5-50-60(A)(2), provides that "[n]o mixed beverage restaurant or carrier licensee shall: . . . Serve as one drink the entire contents of spirits in its original container for on-premises consumption" with certain exceptions not applicable to this case. This prohibition applies to spirits, not to wine or beer. By negative implication, a licensee can sell the entire contents of a wine bottle. See Turner v. Wexler, 244 Va. 124, 127, 418 S.E.2d 886, 887 (1992) (stating the rule that a statute's inclusion of a specific item implies an omitted item's exclusion). Moreover, a "drink" is defined as "[a]ny beverage containing the amount of alcoholic beverages customarily served to a patron as a single serving by a retail licensee." 3 Va. Admin. Code § 5-50-160(A)(2). In contrast to spirits, which are customarily (and must be) served by licensees in a shot glass or in a cocktail, wine and beer are customarily served either in a glass or in bottle or a pitcher.

From an abstract economic perspective, it may matter little whether a restaurant sells one bottle for $100 and parcels it out in twenty-two shot increments, or instead sells twenty-two shots for about $4.55, for a total bill of $100. There is a real world consequence, however, to selling the entire bottle as Wara Wara did. A customer who has paid $100 for the entire bottle will want to get his money's worth and consume the bottle. Twenty-two shots constitute a lot of liquor, even with multiple drinkers sharing the bottle. One of the foundational missions of the ABC Board is to "prevent substance abuse within the Commonwealth." Code § 4.1-103.02. Although licensees are prohibited from serving patrons they know or have reason to know are intoxicated, 3 Va. Admin. Code § 5-50-10(A)(2), it will not always be obvious when a patron or patrons are intoxicated and a busy waiter or bartender may miss that fact.

Wara Wara's practice of selling an entire bottle, consisting of twenty or more "drinks," for the single price of $100, is prohibited by the plain language of 3 Va. Admin Code § 5-50-160(B)(4).[4]

## CONCLUSION

The decision of the circuit court is affirmed.

<u>Affirmed.</u>

---

[4] Because we uphold the ABC Board's decision, we deny Wara Wara's request for attorney's fees.