𝕾𝖙𝖆𝖚𝖓𝖙𝖔𝖓

SUTHERLAND AND COMPANY V. GIBSON.

September 9, 1915.

1. CONTRACTS—*Day of Performance—Whole Day—Sales.*—Where a particular day or time is appointed for the delivery of goods, or for the payment of the price, the party has the whole of the day for the performance on his part, and until the whole of the last day has expired no action will lie against him for the breach of such contract.

2. EVIDENCE—*Written Contract—Custom to Vary Terms.*—Where the minds of the parties have met in an explicit understanding of the entire terms of their contract, every element of which has been reduced to writing in clear and unambiguous language, extraneous evidence of a custom which alters or varies the terms of such contract is not admissible.

Error to a judgment of the Circuit Court of Russell county in an action of assumpsit. Judgment for the defendants. The plaintiff assigns error.

*Reversed.*

The opinion states the case.

*Finney & Wilson,* for the plaintiffs in error.

*S. B. Quillen,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

This action of assumpsit was brought by E. Sutherland & Co. to recover of H. C. Gibson $500, damages alleged to have been sustained by reason of the defendant's breach of a written contract by which he sold the plaintiffs one hundred cattle. The defendant filed a plea of non assumpsit, and a special plea of set off in which it is alleged that

the plaintiffs failed to demand, pay for and receive the cattle within the time specified in the contract and in accordance with a certain custom among cattle dealers governing such contracts, and that by reason of this breach on the plaintiffs' part the defendant had sustained loss and damage to the amount of $607.45, which he asked to have allowed and set off against the demand of the plaintiffs. Upon the trial there was a verdict and judgment in favor of the defendant upon his plea of set off, which this writ of error brings under review.

The contract out of which the controversy arises, dated June 6, 1913, and signed by the defendant, H. C. Gibson, is as follows: "I have this day sold E. Sutherland and Co. one hundred of the pick cattle out of 127 that are being grazed on the Copper Creek Duff farm, and being the cattle bought from R. C. Duff to be weighed from the tenth to fifteenth of October, 1913. At six and one-half cents per pound to be paid for when weighed."

It is not disputed that the place for selecting, weighing and paying for the one hundred cattle was at the scales on the Duff farm in Russell county where the cattle were grazing. The defendant had bought the cattle from Duff, and on the morning of the 15th of October, about nine o'clock, the cattle were weighed and delivered by Duff to the defendant, Gibson, who waited until ten o'clock and then drove the cattle, together with eighty additional head that he mixed with them, a distance of eight miles to Castlewood where he had ordered cars for the purpose of shipping the cattle to Lancaster, Pennsylvania, to be there sold on that market. When the defendant reached Castlewood between one and two o'clock of the 15th day of October, he there met E. Sutherland and F. M. Moss, constituting the plaintiff firm of E. Sutherland & Co., who were on their way to the Duff farm to select, weigh and pay for the cattle in accordance with the contract   When

106

the parties met at Castlewood, there was abundant time for the plaintiffs to have gone on to the Duff farm and performed the contract upon their part before the expiration of the time therein prescribed, and they at once demanded of the defendant delivery of the cattle and expressed their readiness to select, receive and pay for them. The defendant, however, refused to deliver the cattle and shipped them to Lancaster, Pa., contending that, in pursuance of a custom among cattle dealers in that county, it was the duty of the plaintiffs to have been at the Duff farm on the morning of October 15, and to have selected, weighed and paid for the cattle between daylight and nine o'clock of that day, and that not having done so they had forfeited their rights under the contract. On the other hand, the plaintiffs insisted that they were not bound by the suggested custom, if any such existed, and were entitled to select, weigh, pay for and receive the cattle at any time during the 15th day of October in accordance with the terms of their contract.

Over the objection of the plaintiffs the trial court admitted evidence on behalf of the defendant tending to establish the custom relied on, and instructed the jury that if they believed from the evidence that such custom was established then it was incumbent upon the plaintiffs to be present at the Duff farm ready to weigh and pay for the cattle on the 15th of October at the weighing hours of that day prescribed by the custom, and that if they failed to be present during such hours it would constitute a breach of their contract and they must find for the defendant.

We are of opinion that, under the circumstances of this case, it was error to admit the evidence mentioned and to give instructions 3, 6 and 7 based upon such evidence, and to refuse instructions 1 and 2 asked for by the plaintiffs. It is well settled that where a particular day or

time is appointed for the delivery of goods, or for the payment of the price, the party has the whole of the day for performance on his part, and until the whole of the last day has expired no action will lie against him for the breach of such contract. Story on Contracts, Vol. 2, p. 234, sec. 1030; Benjamin on Sales (7th ed.), p. 703.

The contract in the case before us is clear, explicit and easily understood. It expressly provides that the limit of time for weighing and paying for the cattle was to be the 15th day of October, without an intimation that it was to be finally consummated between daylight and nine o'clock of that day. In addition the evidence tends to show that the parties contemplated that the contract would be consummated in accordance with its express terms and not in pursuance of any existing custom. Only two weeks before, the defendant told the plaintiffs that the cattle must be weighed on the 15th of October, without a hint that he expected it to be done between daylight and nine o'clock of that day.

It is true there are cases where parol evidence is admissible to show the custom of the locality where the contract was made, or the usage of trade with reference to which, in the absence of any special agreement, the parties are deemed to have contracted. This class of cases is well illustrated by that of *Richlands, &c., Co.* v. *Hiltebeitel*, 92 Va. 91, 22 S. E. 806, where the memorandum of the agreement merely set forth the various prices to be paid per thousand for certain brick work and did not specify any mode by which the quantity of brick laid was to be ascertained and settled for. This court held that under such circumstances proof of custom or the usage of the trade was admissible to show that the method of ascertaining the number of brick laid was by measuring the work done and allowing so many bricks to the cubic foot. See also *Hansbrough* v. *Neal*, 94 Va. 722, 27 S. E. 593. Where, however,

the minds of the parties have met in an explicit understanding of the entire terms of their contract, every element of which has been reduced to writing in clear and unambiguous language, as in the case at bar, extraneous evidence of a custom which alters or varies the terms of such a contract is, upon familiar principles, inadmissible. *Straus* v. *Fahed, ante* p. 633, 85 S. E. 969. In the case cited the ruling of the trial court excluding evidence of an alleged custom and refusing an instruction based upon such custom was affirmed, this court holding that the deeds involved were the final repository of the rights and liabilities of the parties, and that contemporaneous parol evidence was inadmissible to alter or vary their terms.

It is unnecessary to consider in detail the objections taken to instructions 1, 2, 4 and 5, given for the defendant. In the view we have taken of the case those instructions were irrelevant and should have been refused.

The judgment complained of must be reversed, the verdict of the jury set aside and a new trial had not in conflict with the views herein expressed.

*Reversed.*