**RICHTER v. BARRETT.**

**No. 9641.**

United States Court of Appeals Third Circuit.

Argued Nov. 5, 1948.

Decided Feb. 18, 1949.

---

Benjamin A. Katz, of Philadelphia, Pa., for appellant.

Roy Pressman, of Philadelphia, Pa., for appellee.

Before BIGGS, Chief Judge, and Mc-LAUGHLIN and KALODNER, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This is an appeal from a judgment in favor of the employer on appellant's amended claim for $1,452.60 unpaid overtime compensation, an equal amount of liquidated damages, and a counsel fee, pursuant to Section 16(b) of the Fair Labor Standards Act of June 25, 1938, 52 Stat., 1060, 1069, 29 U.S.C.A. § 216(b). The lower court held that appellant was an executive under the provisions of Section 541.1 of the Regulations of the Administrator of the Wage and Hour Division of the Department of Labor and consequently excluded from the coverage of the Act. It is not now disputed that the employee was engaged in interstate commerce and that the appellant was engaged in the production of goods for interstate commerce. .

Though the testimony was confusing and sharply contradictory in many respects, there was evidence to support the following general outline. On March 6, 1944 appellee was the owner of a Philadelphia janitor supply business. His principal establishment was on Sansom Street, but he also used a garage property on Chancellor Street about 400 feet from the Sansom Street address. Through his business he had contacts with various war plants and had obtained some machine shop work from them. This consisted of bending tubing and the like, which he had been having done for him by somebody in New York. Then, he said, "Mr. Richter came into the picture." Richter had been superintendent of maintenance at Brewster Aircraft. Barrett said he gave him $65 a week to start, raising this to $75 within two weeks, although this latter is disputed. For about ninety days Richter was busy trying to obtain tools and going around with Barrett seeking business. By late May or early in June work was started in the garage. According to Barrett, all during the period that the work continued in the garage, Richter had two full time men under him, except "just in the beginning", and on occasion had three or four. Barrett said that Richter's work was strictly supervision, that he "did not employ Richter to do manual labor." In December 1944 the shop moved to larger quarters on Haverford Avenue. John Ford, a witness on be-

half of the appellant who was hired by Richter and who worked at both Chancellor Street and Haverford Avenue, in response to the court's question as to how many men were employed on machine work in the Haverford Avenue plant, said, "* * * about seven, maybe, or more on production work."

The evidence leaves no real doubt as to appellant's authority to hire or fire the other production employees. On cross examination he was asked, "Did you hire or fire employees who worked under you?" He answered, "With Mr. Barrett's knowledge, yes. I never fired anybody." Richter undoubtedly did considerable manual labor himself, but in addition the testimony is substantial that he was in charge of the operations of the machine shop both at Chancellor Street and later at Haverford Avenue.[1] There is evidence that Barrett visited the shop daily and that Richter talked with him frequently on the telephone. Barrett, however, knew nothing about the work itself. His main job was developing the business. Two executive employees of Barrett in his janitor supply business said they were in the shop frequently. One of them bent tubes on occasion after Richter had shown him how. The other, who was in charge of Barrett's janitor supply warehouse which was also located at the Chancellor Street premises, said that his understanding of Richter's position was that "he was on the same scale with me, the boss in charge * * * of the shop." The record does not reveal that these employees ever interfered with Richter's area of production.

On or about July 12, 1945 Richter refused to permit a mechanic named Daubner to work on a lathe. He quarreled with Barrett over this and because of it severed his connection with the enterprise immediately thereafter. He then sued Barrett in a Pennsylvania state court, alleging his agreement with Barrett was a partnership and that his salary was an advance pending an accumulation of funds. The action resulted unfavorably to Richter, the court holding that the agreement between Barrett and Richter did not constitute a partnership. The present litigation followed. As the trial court noted, "The plaintiff's testimony and, for that matter the whole thing, must be read in the light of the plaintiff's original belief that the relationship between him and the defendant was a partnership."

Whether Richter is within the terms of the Fair Labor Standards Act depends upon Section 13 of that statute, 29 U.S.C.A. § 213, Subsection (a) (1), which reads:

"(a) The provisions of sections 206 and 207 of this title shall not apply with respect to (1) any employee employed in a bona fide executive, administrative, professional, or local retailing capacity, or in the capacity of outside salesman (as such terms are defined and delimited by regulations of the Administrator)".

The applicable regulation of the Administrator of the Wage and Hour Division of the Department of Labor is contained in W & H Regulations, page 10, and that reads:

"Section 541.1—Executive.

"The term 'employee employed in a bona fide executive * * * capacity' in Section 13(a)(1) of the act shall mean any employee—

"(A) whose primary duty consists of the management of the establishment in which he is employed or of a customarily recognized department or subdivision thereof, and

"(B) who customarily and regularly directs the work of other employees therein, and

"(C) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight, and

---

[1] Supplementing testimony along this line there was in evidence a business card of Howard J. Barrett in connection with the venture, on which appeared the name of appellant as "Superintendent." Richter said that he used the card for "a couple of weeks before I left Barrett." There was also a two page business letter on Barrett's stationery dated June 15, 1945 which was signed by "Edward J. Richter, Superintendent."

"(D) who customarily and regularly exercises discretionary powers, and

"(E) who is compensated for his services on a salary basis at not less than $30 per week (exclusive of board, lodging, or other facilities), and

"(F.) whose hours of work of the same nature as that performed by non-exempt employees do not exceed 20 per cent of the number of hours worked in the workweek by the non-exempt employees under his direction; provided that this subsection (F) shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment."

■ The "Report and Recommendations of the Presiding Officer at Hearings Preliminary to Redefinition", Wage and Hour Division, with reference to paragraph (F) of the above regulation suggested the "independent or branch establishment" limitation should "in no instance * * * be construed as applying to a person who does not have at least two other employees under his permanent supervision." This recommendation, while it of course did not have the force of a regulation, nevertheless is entitled to consideration in construing paragraph (F). The District Court so accepted it but found that the facts left no room for its application because, though Richter's hours of work of the same nature as that performed by non-exempt employees exceeded 20% of the number of hours in the workweek by the non-exempt employees under his direction, Richter was in sole charge of an independent and physically separated branch establishment with at least two other employees under his permanent supervision. Cf. Allred v. Sasser, 7 Cir., 170 F.2d 233, 235.

With reference to paragraph (A) of Section 541.1 it is argued that it was Barrett who really supervised the shop and that Richter was not primarily engaged in the management of that end of the business. Not only as seen is there evidence to the contrary showing Richter to have been in charge of production, but that evidence is far more convincing. The fuss with Barrett over Daubner's employment on the lathe, which is urged as indicating that Richter had no executive control, happened over a year after Richter had been engaged by Barrett. It is the sole instance cited of Barrett's interfering in the shop, and, because he did, Richter immediately severed his connections with Barrett.

There is ample evidence also of Richter having customarily and regularly directed the work of other employees, thus fulfilling the requirement of paragraph (B). Richter's own testimony as to hiring and firing the other employees satisfies paragraph (C). True, he did not actually fire any one, but there is no evidence that he could not have done so in a proper situation, as he himself had testified. In the Daubner incident, which apparently was the first time a question of firing an employee arose when Barrett went against Richter's wishes, the latter quit.

Regarding Richter's customary use of discretionary powers as called for by paragraph (D), the record fully supports the finding of the trial judge to that effect. Richter said that he bought all of the machinery and equipment for the shop. He said that Barrett would take him to war plants where he would look at blue prints, bring them back to the shop and estimate production costs. He cooperated with Barrett in determining the sales prices. He checked work that had not been passed by the shop's customers. Barrett testified that Richter's work was "Supervising, laying out the work, and showing them how to do it." He further stated as to Richter, "He did all the figuring. He could read blue prints; I could not read blue prints. I took him out to consult every account." Evidence by other witnesses tended to further strengthen the impression that from a shop standpoint Richter was the only one in charge.

There is considerable controversy between the parties as to how much compensation Richter received. This involves the increase in pay, alleged loans paid on his behalf, and bonus payments. It is, however, unquestioned that he was paid at least $65 a week, which brings him within paragraph (E) of the regulation.

There remains the question as to whether Richter's employment comes within the

324

exception to subsection (F). To do so Richter must have been in sole charge of an independent establishment or physically separated branch establishment. One or the other is enough. The district judge found that under the facts both branches of the exception applied. We think this was proper, for, there is substantial evidence, as already pointed out, that the machine shop was a complete unit and Richter's creature; he had equipped it, organized and maintained its working force, and planned and supervised its production throughout his employment. He did consult with Barrett but at a management level. The evidence also sustains the trial court in finding that the shop was a physically separated branch establishment. Even in its initial location, it was on a different street from Barrett's janitor supply place and some 400 feet away. Other than Barrett's being the owner of both there is no pretension of any connection between the machine shop and the janitor supply business.

The Fair Labor Standards Act is remedial and calls for a liberal construction, but each case must stand on its own facts. Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124. Exemptions are to be restrictively interpreted. Walling v. Keansburg Steamboat Co., 3 Cir., 162 F.2d 405. It is the employer's burden to prove that the employee is exempt from the coverage of the Act. Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 583, 62 S.Ct. 1216, 86 L.Ed. 1682. Whether Richter was exempt from the provisions of the Act is a question of fact, and the findings of the court below may not be set aside on appeal unless clearly erroneous. Walling v. General Industries Co., 6 Cir., 155 F.2d 711, 713, 714.

The trial judge, in a well considered opinion, found that Richter's employment complied with the detailed requirements for exemption set out in Section 541.1 of the governing regulation. Our own independent examination of the record satisfies us that this is justified by the evidence. Cf. Gill v. Mesta Mach. Co., 3 Cir., 165 F.2d 785.

The judgment of the District Court will be affirmed.