Susan Byrnes COTE

v.

BURROUGHS WELLCOME CO.

Civ. A. No. 82–1139.

United States District Court,
E.D. Pennsylvania.

Aug. 17, 1982.

Hepburn, Willcox, Hamilton & Putnam, Jeffrey L. Pettit, Philadelphia, Pa., for plaintiff.

Dechert, Price & Rhoads, Robert M. Landis, Philadelphia, Pa., for defendant.

## MEMORANDUM

NEWCOMER, District Judge.

Defendant Burroughs Wellcome Co. ("Burroughs") moves for summary judgment in this case involving termination of plaintiff's employment with it. Plaintiff, Susan Byrnes Cote ("Cote") sued Burroughs alleging in three counts that Burroughs vio-

lated Section 7 of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207 (Supp.1982) by failing to pay Cote overtime for hours worked in excess of 40 each week (Count I); that Burroughs breached its written employment contract with plaintiff "requiring termination only for just cause" and an "implied covenant . . . to deal fairly and in good faith" (Count II), and that Burroughs's employees tortiously interfered with plaintiff's ability to perform the duties of her employment (Count III). For the reasons set out below I will grant defendant's motion for summary judgment on all three counts.

Burroughs is a North Carolina corporation engaged in the manufacture and sale of pharmaceutical products. Cote was employed by Burroughs as a "Professional Representative" or "detail person." It is undisputed that the responsibility of detail persons is to call regularly on physicians, hospitals, and pharmacies and to increase the sale of Burroughs' products by "detailing" the recommended indications of these drugs to potential prescribers and retailers. Burroughs trains its detail persons for six to eight months and provides them with an extensive set of selling tools including a weekly schedule, preprinted individual Physician and Pharmacy Call Cards, Physician Work Plan Pages identifying who to call during a particular week, and a Selling Plan identifying the drugs to be detailed.

The "detail person" works out of his home and is paid a monthly salary ($1,813 in Ms. Cote's case) irrespective of the number of hours, days, or weeks worked in a month. For one or two days every few months the representative is accompanied on the calls by the District Sales Manager who evaluates the performance of the detail person. In addition each detail person records daily sales, details and sample distribution on a system using computer cards. The representative's job performance is evaluated based on sales results and standardized requirements such as calling on a certain number of physicians per day and presenting each physician with a minimum number of product details.

Cote completed her training as a detail person in February, 1975 and signed an employment contract at that time. She then began work in her assigned territory in northern Virginia.

Cote's performance was satisfactory to Burroughs until 1980 when her performance fell below Burroughs's standards. On June 17, 1980 Cote was placed on a sixty day probation period which provided for possible termination if she did not make a good faith effort to correct the deficiencies. The probation was extended to October 17, 1980 because of Cote's illness.

Cote did not completely meet the requirements of her probation, but because the District Manager felt she had shown improvement, her employment was not terminated. However, on March 31, 1981, Cote was again placed on probation, this time for ninety days, and she was told that "failure to comply with acceptable standards will result in immediate termination." The 1981 probation was extended because of an injury. At the end of this extended period Cote was terminated for failure to meet the terms of the probation. She was paid one month's additional salary in lieu of thirty days' notice.

## COUNT I

The FLSA, 29 U.S.C. § 207 (Supp. 1982) specifies that any employee who works longer than forty hours must receive "compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 213(a) (Supp.1982), however, provides an exemption to this overtime requirement, which applies to "any employee employed in a bona fide executive, administrative, or professional capacity . . ."

Defendants contend that Cote can be classified as an administrative employee under the regulations promulgated by the Labor Department in 29 C.F.R. § 541.2 [1].

1. § 541.2 provides:

§ 541.2 Administrative. The term "employee employed in a bona fide . . . administrative

Both parties agree that a "short form" test in 29 C.F.R. 541.2(e)(2) applies. This subparagraph states that when an employee is compensated at a rate of not less than $250 per week, he is considered administrative if his primary duty consists of the performance of work described in 541.2(a) and "includes work requiring the exercise of discretion and independent judgment." I believe that this short form test in 541.2(e)(2) may be read to apply only to academic personnel, but since both plaintiff and defendant have agreed to apply this less stringent test, and since I believe the same outcome would result under either the "short form" or the full analysis, I am willing to assume that the short form test is appropriate in these circumstances.

Plaintiff concedes that the position of Staff Representative satisfies the requirement of 541.2(a)(1) but argues that the position does not require the exercise of discretion and independent judgment mandated by 541.2(b) or 541.2(e)(2). Cote characterizes this as an issue of fact, not appropriate for summary judgment. Unlike *Richter v. Barrett*, 173 F.2d 320 (3d Cir.1949), cited by plaintiff, however, there are no material issues of fact in dispute as far as Ms. Cote's job duties and description. What is at issue is whether these facts present evidence of the exercise of discretion and judgment as required by the administrative exemption. The situation is most closely analogous to that presented in *Donovan v. Frezzo Brothers, Inc.*, 678 F.2d 1166 (3d Cir.1982), in which the court had to decide on the basis of undisputed facts whether mushroom compost was an agricultural commodity. This was held to be "not an issue of fact which is susceptible of the same determination in every case. To the contrary it is an issue of law which must be decided by examining the statutory definition of agriculture contained in the statute in question." *Id.* at 1171 [2].

The basic job description and responsibilities of a "detail person" are undisputed. Plaintiff maintains that those duties do not meet the regulatory definition of independent judgment and discretion, but are rather the exercise "of skill in applying techniques, procedures, or specific standards," 29 C.F.R. 541.207(b)(1) or else are "decisions relating to matters of little consequence." 29 C.F.R. 541.207(b)(2). For example, plaintiff maintains that the district sales manager establishes the detail person's weekly schedule. The detail person's only responsibility is to plan his schedule to minimize the necessary travel time. Plaintiff further argues that because the choice of which product to detail is preordained by the defendant's selling plan (which includes specific objectives, visual aids to be used, additional points to make on competitive products, and a suggested closing statement) there is little or no discretion given to the detail person. Considering these arguments and viewing these record facts in the light most favorable to the party opposing the motion for summary judgment as mandated by

... capacity" in Section 13(a)(1) of the act shall mean any employee:

(a) Whose primary duty consists of...

(1) The performance of office or nonmanual work directly related to management policies or general business operations of his employer or his employer's customers ... and

(b) Who customarily and regularly exercises discretion and independent judgment; and...

(c)(2) Who performs under only general supervision work along specialized or technical lines requiring special training experience, or knowledge, and...

(d) Who does not devote more than 20 percent ... of his hours worked in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (c) of this section; and

(e)(1) Who is compensated for his services on a salary ... of not less than $155 per week...

2. The fact that the Department of Labor issued an opinion letter in 1945, Labor Department Wage and Hour Opinion, dated May 19, 1945, *cited at* Lab.L.Rep. (CCH), Wage and Hour, v. 1, ¶ 25,210.41, stating that medical "detail" persons are exempt from the provisions of the FLSA, is not dispositive of the issue since it is possible that there were differences in the duties of the employees in the case considered by the Department of Labor and in Cote's case, but the letter is at least some further evidence supporting the conclusion that Cote's position is exempt from the wage and hour provisions of the FLSA.

*United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962), defendant must prevail.

Accepting that Cote had only mechanically to apply specified procedures in setting up her physician visit schedule, and in "detailing" her products there is ample record evidence to show that the job required the exercise of independent judgment and discretion in many other areas. Circumstantial evidence of Cote's exercise of discretion is that plaintiff was commended for her initiative in increasing sales of a certain drug by cultivating a good working relationship with nurses at a particular clinic and asking for their help in reminding physicians about the drug. (Exhibits to Memorandum in Support of Motion of Defendant Burroughs Wellcome Co. for Summary Judgment, Exhibit D–5). Plaintiff herself presents evidence of the type of judgment and discretion required of her. A supervisor's report contains the following admonishment:

> Susan, to be productive in any territory, the most critical aspect to putting the total package together is making a plan. With the wide variety of responsibilities that every representative has, a specific plan must be available to everyone to follow through with each aspect of your job. When determining what is to be accomplished in your territory, make full use of your selling tools, i.e. the physician activity data, the sample allocation list, the PAD list, the TCR performance, etc. You have a multitude of tools that can be programmed into your planning for everyday usage...

Plaintiff's Answer to Defendant's Motion for Summary Judgment, Exhibit B.

Further example of the kind of discretion and judgment expected from detail persons is illustrated in the selling plan cartoons put out by Burroughs, contrasting an effective selling performance with an ineffective one. (Plaintiff's Exhibit L). Clearly, on entering the physicians office (even if plaintiff had very little choice in deciding which physician to visit or which product to detail) the detail person was expected to use a wide degree of discretion in deciding how to encourage the use of the product.

While it is the employer's burden to prove that the employee is exempt from the coverage of the Act, *Richter v. Barrett,* 173 F.2d 320 (3d Cir.1949), I believe that on the undisputed facts Burroughs has met this burden. Accordingly I will grant defendant's motion for summary judgment on Count I on the ground that Cote was in an administrative position exempt from the wage and hour provisions of the FLSA.

## COUNT II

In Count II Cote alleges that Burroughs breached its written employment contract "requiring termination only for just cause" and an "implied covenant . . . to deal fairly and in good faith." Both Burroughs and Cote agree that the choice of law presents no true conflict because the only relevant state laws (North Carolina where defendant corporation is located and where the contract was signed, and Virginia where plaintiff resided and worked) are in accord on the pertinent issues.

The contract contained in a letter of February 3, 1975 from Burroughs to Cote provided as follows:

> Your employment may be terminated in one month's notice either by you or by the Company, but the Company reserves the right to pay you one month's salary and to terminate your employment immediately or at any time during such period. The Company further reserves the right to terminate your employment without notice and without payment of one month's salary in lieu of notice for conduct deemed by the Company to be to its detriment.

State law of both Virginia and North Carolina is clear that when a contract for employment provides no definite period of time for its duration, it is terminable at the will of either party. *Mumford v. Hutton & Bourbonnais Co.,* 47 N.C.App. 440, 267 S.E.2d 511 (C.A.N.Car.1980); *Plaskitt v. Black Diamond Trailer Company,* 209 Va. 460, 164 S.E.2d 645 (1968). Plaintiff's arguments to the contrary are simply without merit.

■ Plaintiff states that business usage or other circumstances may be used as an aid to interpretation, or to establish the terms and conditions of the contract. In the instant case Cote argues that the defendant's Procedures Manual and the manner of termination both demonstrate that the defendant was obligated to treat its representatives fairly and in good faith and to terminate them only for good cause. North Carolina law, however, is clear in stating that personnel policies are not part of the employment contract when such policies were unilaterally implemented by the employer and could be changed by it. *Williams v. Biscuitville, Inc.,* 40 N.C.App. 405, 253 S.E.2d 18, 20 (Ct.App.N.C.1979) (employer failed to follow his own stated personnel policy, yet the court found no breach of contract.)

■ The Virginia case relied on by plaintiff is inapposite. In *Cales v. Chesapeake and Ohio Railway Company,* 300 F.Supp. 155 (W.D.Va.1969), the Court stated in dictum that "a general hiring is terminable at the will of either party . . . in the absence of a statute, custom or contract fixing the term and the conditions." However, under Virginia law, evidence of custom or habit, while it can be introduced to explain a contract, cannot be introduced to alter or vary the express terms of a contract. *Brunswick Box Co. v. Coutinho, Caro & Co.,* 617 F.2d 355, 360, 361 (4th Cir.1980); *Columbia Nitrogen Corporation v. Royster Company,* 451 F.2d 3 (4th Cir.1971); *Knox Stove Works v. Wall,* 180 Va. 267, 23 S.E.2d 161, 163 (1942); *Sutherland & Co. v. Gibson,* 117 Va. 840, 844, 86 S.E. 108, 109 (1915).

■ In the instant case the written contract was quite specific in providing for immediate termination with either 30 days notice or payment of one month's salary. The contract further stated "The Company may change the salary stated above at any time, but except for this the terms of this letter can be changed only by writing signed by you and an authorized representative of the Company."

In view of the clear cut intention expressed in the contract to provide for at-will termination by either party and no modifications unless jointly signed in writing, I will not allow plaintiff to import into this contract a provision requiring just cause termination.

Furthermore, even if I accepted plaintiff's arguments that the Procedures Manual should be used to modify the existing contract, it is not clear that defendants violated its provisions. Plaintiff states, "[t]hus, while the contract reserved the defendant the right to terminate the plaintiff, the defendant's intent, as evidenced by the Procedures Manual, was to exercise that right fairly and after a probationary period where there was an allegation of ineffective performance." Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, p. 17. It would appear that, absent a sophisticated subterfuge, defendant, in allowing Cote two extended probationary periods, did fairly and in good faith exercise its right to terminate.

Cote argues that the Procedures Manual sets up a requirement for termination only for just cause. However, the words of the Procedure Manual, which provide for probation before termination where a Representative's "performance or attitude is judged to be unsatisfactory," do not set up a requirement of termination only for just cause, but simply establish an accepted procedure to be followed in terminating the employment of an employee found to be unsatisfactory by Burroughs. It is undisputed that this procedure was followed in Cote's case.

■ Finally, plaintiff asserts that the section of the contract which specifies that, "[t]he Company further reserves the right to terminate your employment without notice and without payment of one month's salary in lieu of notice for conduct deemed by the Company to be to its detriment," refers to conduct such as theft and disloyalty, which is categorically different from "just cause." Apparently plaintiff is trying to argue that because an employee could be terminated without notice for serious misconduct (not equivalent to just cause), he

could be terminated with notice only for just cause. Even were I to accept plaintiff's unsupported assertion that "conduct deemed by the Company to be to its detriment," is not equivalent to just cause, I would find it impossible to infer from this alone that termination with notice required just cause. This inferential step is simply not supported by any evidence and is a leap of logic I am unwilling to perform.

■ Plaintiff contends further that Cote's employment contract was not terminable at will because she rendered consideration in addition to her employment services. Cote has cited two cases in support of this claim: *Plaskitt v. Black Diamond Trailer Co.,* 209 Va. 460, 164 S.E.2d 645, 649–50 (1968); *Burkhimer v. Gealy,* 39 N.C.App. 450, 250 S.E.2d 678, 682 (1979). Aside from the fact that the North Carolina case is not entirely apposite (since it involves a contract for lifetime or permanent employment) and the language cited from the Virginia case is dictum, Cote has not listed any legitimate examples of additional consideration provided by her in her employment. Her claims of additional consideration include the following: first, the employment contract imposed restrictions on plaintiff's activities outside her employment; second, plaintiff was obligated to turn over to defendant all written material prepared by her in connection with her employment and to assign to defendant any discovery or invention made by her; and, third, plaintiff made material adjustments in her personal life to enable her to continue her employment. For example, she and her husband moved to Silver Spring, Maryland, which complied with defendant's requirement that employees live within a radius of 25 miles of the headquarter city in their territory. (I note, however, that the evidence is undisputed that defendant did not require Cote to make this move and only became aware of it after it occurred). When Cote's husband was transferred to a naval base in New Jersey, plaintiff continued to work and reside in Silver Spring. Finally, Cote's husband agreed to accept a one year hardship assignment in Okinawa in exchange for the assurance that upon his return he would be assigned to Virginia. This agreement was based on the Cotes' expectation that plaintiff would continue to be employed by Burroughs. These considerations cited by plaintiff are simply not equivalent to the kind of consideration necessary to overcome an at-will contract. *See Burkhimer v. Gealy,* 39 N.C.App. 450, 250 S.E.2d 678, 682 (1979) ("relinquishing a claim for personal injuries against the employer, removing his residence from one place to another in order to accept employment, or assisting in breaking a strike.")

Therefore, I will grant summary judgment in favor of defendant on Count II on the grounds that Burroughs did not breach its written contract with Cote when it fired her and paid her one month's salary in lieu of 30 days notice, a procedure provided for in the contract.

## COUNT III

Finally Cote alleges that defendant's employees prevented her from maintaining satisfactory call averages, which resulted in the termination of her employment. She argues that the allegations state a cause of action for tortious interference with contract. However, in all cases cited by plaintiff to support her claim, the suit was brought against third parties (not party to the contract) who tortiously interfered with the contract. *See Wilson v. McClenny,* 262 N.C. 121, 136 S.E.2d 569 (1964); *Smith v. Ford Motor Co.,* 289 N.C. 71, 221 S.E.2d 282 (1976). In the instant case, the suit is against the employer, Burroughs, a party to the contract and is thus based on Burroughs vicarious responsibility for the acts of its employees.

■ Plaintiff also alleges a conspiracy to induce the breach of a contract. While Virginia does recognize such a cause of action, *Worrie v. Boze,* 198 Va. 533, 95 S.E.2d 192 (1956), the action cannot be brought against a corporation for conspiring with its own employees. *Griffith v. Electrolux Corp.,* 454 F.Supp. 29 (E.D.Va. 1978); *O'Neill v. ARA Services, Inc.,* 457 F.Supp. 182, 188 (E.D.Pa.1978).

Plaintiff is therefore asking this Court to create a new cause of action by holding an employer vicariously liable for its employees' alleged interference with the employer's contractual relations with another employee. A district court sitting in diversity must apply existing state law. "[W]here the state law is established, a federal court may not disregard it merely because some lower courts and commentators are calling for change. For several sound reasons a district court does not share the freedom of a state court to depart from a clear legal rule in the belief that it might or should be changed." *Boniuk v. New York Medical College,* 535 F.Supp. 1353 (S.D.N.Y., 1982). A federal court's "assigned role is to predict and not to form state law." *Keystone Aeronautics Corp. v. R.J. Enstrom Corp.,* 499 F.2d 146, 147 (3d Cir.1974).

Even if the equities were compelling I could not overstep the jurisdictional bounds of this Court and create a new cause of action not at all based on existing state law. For this reason I will grant defendant's motion for summary judgment on Count III.