**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GINA D'ESTE, on behalf of herself
and others similarly situated,
            *Plaintiff-Appellant,*

v.

BAYER CORPORATION; DOES, 1-50,
            *Defendants-Appellees.*

No. 07-56577

D.C. No.
CV-07-03206-JFW-
PLA
Central District of
California,
Los Angeles

ORDER
CERTIFYING
DETERMINATIVE
QUESTIONS
OF LAW TO THE
CALIFORNIA
SUPREME COURT

Filed May 5, 2009

Before: Daniel M. Freedman,* Andrew J. Kleinfeld and
Sandra S. Ikuta, Circuit Judges.

## ORDER

We respectfully request that the Supreme Court of California exercise its discretion to decide the certified questions set forth in Part II of this order.

*The Honorable Daniel M. Friedman, Senior United States Circuit Judge for the Federal Circuit, sitting by designation.

## I.   Caption and Counsel

A.   The caption of the case is:

No. 07-56577

GINA D'ESTE, on behalf of herself and others similarly situated,

                              Plaintiff - Appellant,

   v.

BAYER CORPORATION; DOES, 1-50,

                              Defendants - Appellees.

B.   The names and addresses of counsel for the parties are:

For *Plaintiffs-Appellants*:   James A. Jones, Gillespie, Rozen, Watsky & Jones, P.C., 3402 Oak Grove Ave., Suite 200, Dallas, Texas, 75204.

For *Defendants-Appellees*: Melinda S. Riechert, Morgan, Lewis & Bockius LLP, 2 Palo Alto Square, 3000 El Camino Real, St. 700, Palo Alto, California 94306-2122;

Thomas M. Peterson and Shannon B. Nakabayashi, Morgan, Lewis & Bockius LLP, One Market, Spear Tower, San Francisco, California 94105;

Jennifer White-Sperling, Morgan, Lewis & Bockius LLP, 5 Park

Plaza, Suite 1750, Irvine, California, 92614.

C. Designation of the party to be deemed petitioner: Plaintiff-Appellants

## II.   Questions Certified

Pursuant to Rule 8.548 of the California Rules of Court, a panel of the United States Court of Appeals for the Ninth Circuit, before which this appeal is pending, requests that the Supreme Court of California answer the questions presented below. This court will accept the California Supreme Court's decisions on these questions. Our phrasing of the questions is not intended to restrict the California Supreme Court's consideration of the case. The questions certified are:

1.  The Industrial Welfare Commission's Wage Orders 1-2001 and 4-2001 define "outside salesperson" to mean "any person, 18 years of age or over, who customarily and regularly works more than half the working time away from the employer's place of business selling tangible or intangible items or obtaining orders or contracts for products, services or use of facilities." 8 Cal. Code Regs., tit. 8, §§ 11010, subd. 2(J); 11040, subd. 2(M). Does a pharmaceutical sales representative (PSR) qualify as an "outside salesperson" under this definition, if the PSR spends more than half the working time away from the employer's place of business and personally interacts with doctors and hospitals on behalf of drug companies for the purpose of increasing individual doctors' prescriptions of specific drugs?

2.  In the alternative, Wage Order 4-2001 defines a person employed in an administrative capacity as a person whose duties and responsibilities involve (among other things) "[t]he performance of office or non-manual work directly related to management policies or general business opera-

tions of his/her employer or his employer's customers" and "[w]ho customarily and regularly exercises discretion and independent judgment." Cal. Code Regs., tit. 8 § 11040, subd. 1(A)(2)(a)(I), 1(A)(2)(b). Is a PSR, as described above, involved in duties and responsibilities that meet these requirements

## III. Statement of Facts

Gina D'Este worked for Bayer Pharmaceuticals for thirteen years as a pharmaceutical sales representative. Bayer's job description states that her job was to "[p]romote and sell Bayer Pharmaceutical Division's anti-infective products to targeted offices and hospital-based, high-potential physicians, including specialists." Bayer gave D'Este a roster of doctors and hospitals in her area and a list of Bayer products for which she was responsible. D'Este's job was to communicate information about her Bayer products to her roster of doctors and seek their non-binding commitment to write prescriptions for those products. She was also responsible for communicating with hospitals in her territory to influence them to add the Bayer products for which she was responsible to their formularies.

Bayer refers to its PSRs as a sales force and individual PSRs as salespersons; Bayer also trains its PSRs in what it calls sales skills. Specifically, Bayer trained D'Este in a "consultative" selling method of engaging doctors in a dialogue about the products in order to influence their prescribing behavior. D'Este was trained on a message and had to adhere closely to the information provided by Bayer about its products. Otherwise, she had the freedom to develop her own strategy for communicating with and influencing doctors. D'Este learned to customize her sales presentations "based upon physician style, time constraints, prescribing habits, and managed care status." D'Este also received training in how to handle questions from doctors about the different products for which she was responsible. D'Este was responsible for plan-

ning speaking events and could choose the speakers from the list provided by Bayer.

Bayer compensated PSRs in part based on their success in increasing sales of Bayer products in their areas. Bayer tracked prescriptions written and filled for D'Este's list of products by the doctors in D'Este's territory. D'Este was rewarded when sales figures exceeded certain quotas. According to Bayer, D'Este earned between $81,000 and $103,000 per year during the 2000-2004 period at issue here.

Although Bayer describes D'Este and other PSRs as a sales force, PSRs do not complete sales transactions with doctors. PSRs do not receive any payment from doctors for Bayer products, nor do they sign binding contracts for sales with doctors. Doctors do not place orders for Bayer products with PSRs. Rather, PSRs are limited to influencing doctors to increase the number of prescriptions they write for each drug. D'Este also solicited hospitals to include Bayer pharmaceuticals on their formularies, and on occasion signed contracts with hospitals to do so. The hospitals, however, would buy the pharmaceutical products from a wholesaler, not from D'Este or Bayer.

As a PSR, D'Este had flexibility regarding how she spent her day. She developed her own schedule for meeting with the doctors on her list. She received little or no daily supervision, and saw her manager once every six to eight weeks. D'Este could take care of personal obligations during the day, although Bayer expected her to make eight to ten calls per day on doctors in the field. D'Este routinely worked more than eight hours a day and more than forty hours a week. She also often worked weekends. In addition, her job required that she frequently have lunch and dinner with doctors. During the course of her employment, she regularly had working lunches with doctors at least three times a week.

During the course of her employment at Bayer, D'Este was treated as an exempt employee. She did not receive any addi-

tional overtime compensation or meal breaks, but she was also not required to keep or maintain set hours.

In 2004, D'Este left Bayer after Bayer reduced its workforce. In 2007, she brought this lawsuit in California state court on behalf of herself and others similarly situated, claiming she had been wrongly classified as an exempt employee and was entitled to back pay and damages under California's wage and hour laws. The district court granted summary judgment in favor of Bayer, finding that D'Este was exempt under California's outside sales exemption and declining to reach the question whether D'Este was exempt under California's administrative exemption. D'Este timely appealed.[1]

## IV.    Explanation of Our Request

The question whether PSRs are exempt under California's outside salesperson and administrative exemptions is the central issue in multiple class action lawsuits in the Ninth Circuit as well as in other circuits. In addition to the three cases pending before the Ninth Circuit, at least four other class action suits have been filed in federal court in the Central District of California. *See Yacoubian v. Ortho-McNeil Pharm., Inc.*, No. 07-00127 (C.D. Cal. Feb. 6, 2009); *Delgado v. Ortho-McNeil, Inc.*, No. 07-00263 (C.D. Cal. Feb. 6, 2009); *Rivera v. Schering Corp.*, No. 08-1742 (C.D. Cal. Aug. 14, 2008); *Brody v. Astrazeneca Pharm., LP*, No. 06-6862 (C.D. Cal. June 11, 2008). In addition, a class-action arising under California law has been filed in federal court in the Southern District of New

---

[1]On appeal, this case was consolidated with two other cases pending before the Ninth Circuit, *Barnick v. Wyeth*, 07-56684, and *Menes v. Roche*, 08-55286, both raising nearly identical state law claims. Respecting the California Supreme Court's limited resources, for the purposes of this certification order, we request that the California Supreme Court resolve only the questions presented in D'Este's claim. If the California Supreme Court decides these questions, we will resolve the remaining cases in light of the California Supreme Court's answers to the certified questions.

York. *See In re Novaris Wage & Hour Litig.*, No. 06-1794, 2009 WL 63433 (S.D.N.Y. Jan. 12, 2009).

In light of the scope of the pending litigation regarding the classification of PSRs under California Labor Code section 1171, we respectfully submit that the questions we pose are worthy of a decision by the California Supreme Court. *See* Cal. Rules of Court 8.548(a). The answers given by the California Supreme Court will dispose of the three pending appeals currently before the Ninth Circuit, as well as guide the decisions in the other federal cases applying California law.

A

In order to assist the California Supreme Court in evaluating our request, we briefly explain why we believe there is no controlling precedent or clear state court guidance on the question whether PSRs are exempt under the outside salesperson exemption.

Section 510 of the California Labor Code requires employers to compensate non-exempt employees for overtime work. *See* Cal. Labor Code § 510(a). However, section 1171 of the California Labor Code exempts an employee who is "employed as an outside salesman" from that requirement. *See* Cal. Labor Code § 1171. The IWC's Wage Orders 4-2001 and 1-2001 define "outside salesperson" as someone whose job involves "selling tangible or intangible items or obtaining orders or contracts for products, services or use of facilities." 8 Cal. Code Regs., tit. 8, §§ 11010, subd. 2(J); 11040, subd. 2(M). The regulations do not further define these key terms, the IWC provides no authoritative guidance regarding how these regulations apply to PSRs, and the California Supreme Court has not construed the particular terms "selling" and "obtaining orders" so as to be instructive in this case.

In the absence of any authoritative state construction, we turned first to the plain language of section 1171 and Wage

Orders 1-2001 and 4-2001. In our view, neither the plain language of the statute nor the language of the interpretive orders answer the question whether a PSR is an outside salesperson. As noted above, the IWC's Wage Orders 4-2001 and 1-2001 define "outside salesperson" as someone whose job involves "*selling* tangible or intangible items or *obtaining orders or contracts* for products, services or use of facilities." 8 Cal. Code Regs., tit. 8, §§ 11010, subd. 2(J); 11040, subd. 2(M) (emphasis added). D'Este claims that the ordinary meaning of "selling" is the transfer of property for consideration. Similarly, D'Este argues that "obtaining orders or contracts" means acquiring a written direction to deliver property or obtaining a contractual agreement to exchange property for consideration. In other words, D'Este contends that outside salespersons must consummate their own sales, and, because PSRs do not, they are not outside salespersons.

Bayer argues that the plain language of the wage order does not require employees to consummate their own sales. Bayer contends that the exemption covers employees who engage in any part of the multiple-step process of selling or obtaining orders, and therefore does not require that the salesperson have the capacity to close a sale or receive a completed order. According to Bayer, D'Este is involved in selling because she is involved in the sales process and engaged primarily in "sales activities." *See Walsh v. Ikon Office Solutions, Inc.*, 148 Cal. App. 4th 1440, 1454 (Cal. Ct. App. 2007) (referring to cold calls, client visits, and face-to-face contacts as "sales activities"). Moreover, Bayer argues that D'Este is also involved in "obtaining orders" because she influences doctors to write prescriptions, which are "orders" under California law. *See* Cal. Bus. & Prof. Code § 4040(a) (defining a prescription as "an oral, written, or electronic transmission order" that is "given individually for the person . . . for whom ordered" and "[i]ssued by a physician" or other medical personnel).

In reviewing these arguments, we have concluded that the plain language of the regulation is susceptible to both inter-

pretations. The California Supreme Court's guidance that "exemptions from statutory mandatory overtime provisions are narrowly construed," *Ramirez v. Yosemite Water Co.,* 20 Cal. 4th 785, 794 (1999); *accord Nordquist v. McGraw Hill Broad. Co.*, 32 Cal. App. 4th 555, 562 (Cal. Ct. App. 1995), does not provide clear direction regarding which of the two interpretations the California Supreme Court would determine to be correct.

We have also considered whether federal interpretations of the parallel exemption under the Fair Labor Standards Act, 29 U.S.C. § 213(a)(1), provide any guidance in interpreting California's outside sales exemption. The California Court of Appeal has held that "[b]ecause the California wage and hour laws are modeled to some extent on federal laws, federal cases may provide persuasive guidance." *Nordquist*, 32 Cal. App. 4th at 562. However, "where the language or intent of state and federal labor laws substantially differ, reliance on federal regulations or interpretations to construe state regulations is misplaced." *Ramirez* 20 Cal. 4th at 798; *accord Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 594 (2000). In *Ramirez*, the California Supreme Court noted that the IWC's interpretation of the outside sales exemption does not closely track the language of the analogous federal regulations defining an outside salesperson. *Ramirez*, 20 Cal. 4th at 796. *Compare* 29 C.F.R. § 541.500(a) (2004) (defining outside salesperson as "any employee whose primary duty is *making sales* . . . or obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and [w]ho is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty") (internal formatting altered and emphasis added), *with* 8 Cal. Code Regs. § 11040 subd. 2(M) ("any person, 18 years of age or over, who customarily and regularly works more than half the working time away from the employer's place of business *selling* tangible or intangible items or obtaining orders or contracts for products, services or use of facilities") (emphasis added); *see gen-*

*erally* Cal. Div. of Labor Standards Enforcement, Opinion Letter, *Outside Salesman* (July 14, 1994), *available at* http://www.dir.ca.gov/dlse/opinions/1994-07-14.pdf. Therefore, interpretations of the federal outside sales exemption under the Fair Labor Standards Act, including federal regulations and case law, may be of limited assistance. *See Ramirez*, 20 Cal. 4th at 797 ("By choosing not to track the language of the federal exemption and instead adopting its own distinct definition of 'outside salespersons,' the IWC evidently intended to depart from federal law and to provide, at least in some cases, greater protection for employees.").

Given the importance of correctly interpreting the outside salesperson exemption under California law, and the lack of authoritative guidance, we respectfully request that the California Supreme Court provide us with a ruling on this issue.

### B

In the alternative, or if the California Supreme Court determines that the outside salesperson exemption is not applicable to PSRs, we ask the California Supreme Court to answer our second question regarding the applicability of two key sections of the administrative exemption to pharmaceutical sales representatives.

Wage Order No. 4-2001 provides a detailed multi-element definition of "persons employed in an administrative capacity," which delineates the scope of the administrative exception. At issue in this case is: (1) whether, under California law, D'Este was engaged in work that "directly related to management policies or general business operations of his/her employer or his employer's customers"; and (2) whether she "customarily and regularly exercise[d] discretion and independent judgment." 8 Cal. Code Regs., tit. 8, § 11040, subd. 1(A)(2)(a)(I), 1(A)(2)(b); *accord Combs v. Skyriver Commc'ns, Inc.*, 159 Cal. App. 4th 1242, 1254 (Cal. Ct. App. 2008).

In determining whether D'Este was engaged in work that is "directly related to management polices or general business operations," we are guided by Wage Order 4-2001, which provides that "[t]he activities constituting exempt work and non-exempt work shall be construed in the same manner as such terms are construed in the following regulations under the Fair Labor Standards Act effective as of the date of this order: 29 C.F.R. Sections 541.201-205 . . . ." 8 Cal. Code Regs., tit. 8, § 11040 subd. 1(A)(2)(f); *accord Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1129 (9th Cir. 2002). The applicable federal regulation, 29 C.F.R. § 541.205(b) (1998), explains that the "administrative operations of the business include the work performed by so called white-collar employees engaged in 'servicing' a business." This work includes "promoting sales." In addition, an employee must "perform work of substantial importance to the management or operation of the business." The parties dispute whether D'Este was "promoting sales" and whether she was engaged in "work of substantial importance to the management or operation of the business" as a matter of California law. No California case has addressed this issue.

Nor is there any clear state guidance on the second question, whether a PSR in D'Este's position "customarily and regularly exercise[d] discretion and independent judgment." 8 Cal. Code Regs., tit. 8, §11040, subd. 1(A)(2)(a)(1), 1(A)(2)(b). The California Court of Appeal has held that an employee who merely relies on "skills and knowledge" does not qualify for this exemption. *Nordquist*, 32 Cal. App. 4th at 563. In order to exercise "discretion and independent judgment," the employee must be involved in making decisions related to "matters of consequence," and which are of "real and substantial significance to the policies or general operations of the business of the employer or the employer's customers." *Id., see also Combs,* 159 Cal. App. 4th at 1254. In this case, the record establishes that D'Este had significant autonomy and decisionmaking authority with respect to designing and implementing a strategy for influencing doc-

tors' prescribing behavior and hospitals' decisions regarding their formularies. On the other hand, D'Este's discretion was substantially constrained by Bayer's control over the message and target audience. Neither the language of the exemption nor the case law clearly answers the question whether, under California law, D'Este exercised "discretion and independent judgment" in this context. The one directly applicable federal case decided prior to the adoption of Wage Order 4-2001, *Cote v. Burroughs Wellcome Co.*, 558 F.Supp. 883, 887 (E.D. Pa. 1982), found that PSRs do exercise such responsibility.

Accordingly, we respectfully urge the California Supreme Court to address the applicability of the administrative exemption to PSRs, which is an important issue of first impression.

## V. Accompanying Materials

The clerk of this court is hereby directed to file in the California Supreme Court, under official seal of the United States Court of Appeals for the Ninth Circuit, copies of all relevant briefs and excerpts of the record, and an original and ten copies of the request with a certification of service on the parties, pursuant to California Rules of Court 8.548(c), (d).

Further proceedings before us are stayed pending the California Supreme Court's decision regarding certification, and in the event the California Supreme Court accepts certification, pending our receipt of the answers to the questions certified. Submission of this case is withdrawn.

After the California Supreme Court makes its determination whether to accept certification of these questions, the parties shall file a joint report informing this court of the decision. If the California Supreme Court accepts the certified questions, the parties shall file a joint status report to our court every six months after the date of acceptance, or more frequently if circumstances warrant.

If the California Supreme Court denies the request for certification, this case will be resubmitted automatically upon notice of that denial. If the California Supreme Court accepts the request for certification, the case will be resubmitted automatically upon receipt of the California Supreme Court's answer to the certified question.

**SO ORDERED.**

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON REUTERS/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2009 Thomson Reuters/West.